**NORTHWEST BANK AND TRUST COMPANY, Appellee,**

v.

**Ronald GUTSHALL, Appellant.**

**No. 61570.**

Supreme Court of Iowa.

Jan. 24, 1979.

Gregory A. Hulse, of Van Werden & Hulse, Adel, for appellant.

James W. Berry, Davenport, for appellee.

Considered by REES, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

REES, Justice.

This is an appeal by the defendant Ronald Gutshall from the trial court's award of a deficiency judgment in favor of plaintiff Northwest Bank & Trust Company and from the judgment of the court dismissing defendant's counterclaims against the appellee Bank for alleged violations of the Iowa Commercial Code, the Iowa Consumer Credit Code, and the Federal Truth-in-Lending Act. We reverse and remand for the award of appropriate damages.

Prior to July 1, 1974 (the effective date of the Iowa Consumer Credit Code), Gutshall executed a promissory note in the principal amount of $3,088.20 to the plaintiff Northwest Bank & Trust Company, which was secured by a first lien on a 1969 Cadillac automobile. Gutshall was later adjudicated a bankrupt under the Federal Bankruptcy Act. On May 21, 1975, after having been adjudicated a bankrupt, Gutshall executed a "reaffirmation agreement" in favor of the plaintiff Bank by which he agreed to honor the debt previously entered into, binding himself under the reaffirmation agreement to the payment of the sum of $1881, in monthly installments of $104.50, commencing on July 15, 1975. The reaffirmation agreement bound Gutshall to honor the debt previously entered into as evidenced by the original promissory note.

Gutshall later defaulted in his payments to the Bank and on October 3, 1975 the Bank repossessed the automobile which secured the payment of the promissory note. The Bank then sold the automobile and instituted the within suit against Gutshall praying judgment against him for the sum of $1,078.32, which the Bank represented was the balance due and remaining after allowing credit for all payments made by Gutshall and for the funds obtained from the repossession and sale of the automobile. Gutshall counterclaimed, alleging violations of § 554.9504(3) of the Iowa Commercial Code, §§ 537.5110 and 537.5111 of the Iowa Consumer Credit Code, and § 1639 of the Federal Truth-in-Lending Act, 15 U.S.C.

Specifically, Gutshall alleged in his counterclaim that: (1) plaintiff failed to give reasonable notification of the time after which any private sale or other disposition of the collateral would be made in violation of § 554.9504(3); (2) plaintiff's disposition of the collateral was not commercially reasonable in violation of § 554.9504(3); (3) plaintiff failed to give written notice to defendant of his right to cure the default in violation of § 537.5110, The Code; (4) the reaffirmation agreement was required to afford to Gutshall a clear and conspicuous notice of the type required by § 537.3203, The Code, and that the reaffirmation agreement failed to disclose finance charges as required by 15 U.S.C. § 1639 and § 537.3201, The Code. Based on said allegations, Gutshall claimed actual damages of $1,416.20, statutory damages in an amount between $100 and $1000 for each violation of the Consumer Credit Code and the Truth-in-Lending Act, as well as costs and attorney fees authorized by the aforementioned statutes.

The trial court entered judgment on January 25, 1978, awarding plaintiff Bank a deficiency judgment of $1,078.32 with interest as prayed in plaintiff's petition, and overruled all of defendant's counterclaims. From said judgment and decree, defendant appeals. On April 6, 1978 plaintiff filed its motion to dismiss the appeal, alleging the amount in controversy is less than the required $3000, which motion was resisted by the defendant, and on May 5, 1978 we or-

dered the motion to dismiss to be submitted with the appeal.

The defendant presents the following issues for review:

(1) Should the within appeal be dismissed because the amount in controversy as shown by the pleadings is less than $3000 as required by rule 3, Rules of Appellate Procedure?

(2) Did the trial court err in awarding plaintiff Bank a deficiency judgment due to the failure of plaintiff to meet the requirements of § 554.9504(3), The Code, in disposing of the collateral property?

(3) Did the trial court err in not finding the reaffirmation agreement subject to the requirements of the Iowa Consumer Credit Code and the Truth-in-Lending Act?

(4) Does chapter 537, The Code, apply to this transaction insofar as notice of debtor's right to cure default is required by §§ 537.-5110 and 537.5111, The Code?

We shall consider damages, if appropriate, under any of the aforementioned statutes in the discussion of the applicable issues.

I. Plaintiff Bank contends that the jurisdictional amount of $3000 is not involved in this appeal and therefore the appeal must be dismissed as violative of rule 3, R.A.P. The Bank asserts that since this court held in *Bridal Publications, Inc. v. Richardson,* 229 N.W.2d 771 (Iowa 1975), individual plaintiffs could not aggregate separate and independent claims to attain the jurisdictional amount, that a single plaintiff could not aggregate claims to reach the minimum amount in controversy under rule 3. Gutshall contends the jurisdictional amount to be reached through the aggregation of: (1) the deficiency judgment, statutory damages awardable under the Iowa Commercial Code, the Iowa Consumer Credit Code, and the Federal Truth-in-Lending Act, and (2) the costs of the action and reasonable attorney fees awardable under § 537.5201(8) of the Consumer Credit Code. We perceive no merit in the Bank's argument.

We have said that the test for determining whether the requisite jurisdictional amount is controverted is whether the trial court could have entered judgment against any party for more than the jurisdictional minimum amount. *Benttine v. Jenkins Truck Lines, Inc.,* 182 N.W.2d 374 (Iowa 1970). In determining the amount in controversy, the pleadings generally set out the measure of recovery. *Bridal Publications,* supra.

Neither party disputes the fact that on the basis of the pleadings the appellant could have been awarded more than $3000. We, therefore, turn to the aggregation issue. Gutshall's counterclaims are all based on statutes, both Iowa and federal, covering consumer credit transactions, the alleged violation of which all occurred within the same factual context. The same statutes which give rise to the cause of action authorize the award of damages and attorney fees. As such, the potential for the award of costs and attorney fees inheres within the cause of action, and should be considered in computing the amount in controversy. Analogous support, although broader than necessary for purposes of this case, is found under rule 18 of the Federal Rules of Civil Procedure and cases cited in 14 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 3704, n. 6.

With specific reference to the question of attorney fees and costs, it should be noted that the Supreme Court of Kansas has concluded that attorney fees authorized under their consumer credit code, which is couched in terms identical to ours, are to be computed in calculating the amount in controversy, *Central Finance Co., Inc. v. Stevens,* 558 P.2d 122, 125 (Kansas). Wright, in Federal Courts, § 35, Interests and Costs (3rd ed. 1976) at page 136, provides support:

"The only problem has been whether attorney's fees, where they are allowed, are within the exclusion, and it is now quite settled that such fees are a part of the matter in controversy where they are provided for by contract, or by state law, so long as the fee demanded is reasonable."

We have reached somewhat similar conclusions concerning attorney fees when their award was directly at issue, *Farley v. Geisheker,* 78 Iowa 453, 43 N.W. 279, and counterclaims for exemplary damages, *Stark v. L. Ginsberg and Sons,* 236 Iowa 735, 18 N.W.2d 627. To the extent that the damages authorized by the statutes in the matter before us here are akin to exemplary damages, there appearing to be a common deterrent purpose behind both, *Stark* supports the result reached herein.

We hold that statutorily authorized damages, costs, and attorney fees prayed for by way of counterclaim are to be considered in determining whether the jurisdictional amount is involved. *Bridal Publications,* supra, cited by the Bank is readily distinguishable in that it involved multiple plaintiffs and totally distinct claims. Here we have one plaintiff aggregating claims arising from the same factual situation.

II. Having found the requisite amount to be involved in this appeal, we must now determine whether the trial court erred in awarding plaintiff a deficiency judgment due to an alleged non-compliance with § 554.9504(3), The Code, regarding the disposition of collateral. Section 554.9504(3) provides:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale. In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor's renunciation of his rights) written notice of a claim of an interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

The trial court found that plaintiff had mailed a "10-day notice of redemption" to Gutshall, and that the notice "complied with any requirements as it reasonably informed the defendant of the claimed amount and redemption rights." Gutshall argues that the evidence fails to support a finding that the plaintiff sent "reasonable notification of the time and place of any public sale or reasonable notification after which any private sale or other intended disposition" of the collateral as required by § 554.9504(3). We agree, and reverse the award of a deficiency judgment.

In an action for a deficiency judgment, the plaintiff has the burden of establishing compliance with the statutory requirement of reasonable notice. *Federal Deposit Insurance Corporation v. Farrar,* 231 N.W.2d 602 (Iowa 1975). The Bank here allegedly sent, via regular mail service, a "10-day notice" to Gutshall. Gutshall denied receipt of any such notice. We have held that proof of actual receipt is not a requisite for recovery of a deficiency, but have required evidence that the notice in question was "in fact properly mailed", *Beneficial Finance Co. of Blackhawk County v. Reed,* 212 N.W.2d 454, 459 (Iowa 1973). The Eighth Circuit Court of Appeals, construing § 554.9504(3) in *Leasing Associates, Inc. v. Slaughter and Son, Inc.,* 8 Cir., 450 F.2d 174, concluded that Iowa law required proof that reasonable notice was sent, and called for either testimony by the mailing clerk as to the customary office practice or direct proof of actual mailing. See 450 F.2d 177–179.

The trial court in this case made a finding of fact that the Bank had mailed notice to Gutshall. An examination of the transcript of the evidence in this case leads us to the conclusion that such finding was not supported by substantial evidence.

The conclusion of the trial court was apparently based upon a notation on the back of a ledger card: "10/27 10-day notice", and the testimony of the Bank's sole witness, its collection manager, that it was the Bank's business practice to have mailed the notice when such a notation is entered. Mr. Clark, the collection manager, was not employed by the Bank in that capacity when the notice was allegedly sent, and had no personal knowledge of whether the notice had in fact been mailed, nor of the office practice at the time it was allegedly mailed. There is no evidence in the record as to who directed the notice to be sent, who sent it, or that it was in fact mailed. The Bank did not introduce a copy of the notice supposedly sent the defendant, but submitted a copy of a "ten-day notice" sent to another debtor, as supportive of the Bank's collection practices. When combined with the defendant's testimony that he had not received the "ten-day" notice, the lack of proof of actual mailing leads to the conclusion that there is a lack of substantial evidence to support the trial court's finding. Absent a more substantial showing of actual mailing of the notice, we cannot conclude the Bank acted in a commercially reasonable manner in disposing of the collateral. Therefore, the Bank is precluded from recovering a deficiency judgment, *Beneficial Finance Co. of Blackhawk County v. Reed,* supra.

Our conclusion in this regard is re-enforced by the complete lack of evidence in the record concerning the contents of any notice allegedly sent to Gutshall. Consequently, we cannot conclude Gutshall was informed of the means by which the collateral was to be sold. The importance of reasonable notice to the debtor is highlighted by the statement of this court in *Federal Deposit Insurance Corporation v. Farrar,* supra at page 605 of 231 N.W.2d:

"The purpose of notice under section 554.9504(3) is to permit the debtor to bid at the sale or to protect himself from an inadequate sale price. * * * A debtor unable or unwilling to exercise his section 554.9506 redemption right may still wish to bid on the property or encourage others to do so to insure a fair sale price which would minimize or eliminate a deficiency."

The potential for dispute concerning the disposition of the collateral when reasonable notice is not given is illustrated by the factual situation before us in this case. Gutshall alleges that the sale of the automobile was not commercially reasonable as required by § 554.9504(3) in that neither of the bids received by the Bank at the private sale were commensurate with the fair market value of the automobile. While we do not pass on the validity of Gutshall's claim in this regard due to finding other grounds for invalidating the award of a deficiency judgment, we do note that notice of the time and manner of the disposition of the collateral would insure the debtor having an opportunity to participate in the sale and better represent his own interests.

Gutshall contends that in addition to the denial of a deficiency judgment, he is entitled to damages in accordance with the provisions of § 554.9507(1), The Code, which provides:

"If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the time price differential plus ten percent of the cash price."

Depending on whether the initial financial agreement or the reaffirmation agreement is employed, Gutshall computes the amount to which he is entitled to be either $394.03

or $514.75. We read the foregoing section, and more particularly the formula set out therein, to establish a minimal amount of recovery when there is inadequate notice, due to the "in any event" language therein. Such a view has been expressly taken by several jurisdictions, *Atlas Credit Corp. v. Dolblow,* 193 Pa.Super. 649, 165 A.2d 704, 708 (Pennsylvania); *Community Management Association of Colorado Springs, Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314, 1317 (Colorado); *Walker v. V. M. Box Motor Company, Inc.,* 325 So.2d 905, 907 (Mississippi); *Conti Causeway Ford v. Jarossy,* 114 N.J.Super. 382, 276 A.2d 402, 405 (N.J.), and *Crosby v. Basin Motor Company,* 83 N.M. 77, 488 P.2d 127, 129 (New Mexico). We are unable to find any inconsistent views. The amount of the alleged deficiency, $1,078.32, which the Bank is barred from collecting, is greater than either figure computed by the defendant. Therefore, § 554.9507(1) provides no further relief or damages for the defendant.

Having determined the Bank is precluded from recovering a deficiency judgment due to the lack of reasonable notice to the debtor regarding the disposition of the repossessed collateral as required by § 554.9504(3), The Code, we now evaluate Gutshall's remaining contentions of error.

III. The trial court summarily denied all of Gutshall's counterclaims, both those based on the Federal Truth-in-Lending Act and the Iowa Consumer Credit Code, concluding: "The original indebtedness, subsequently discharged in bankruptcy, was reaffirmed and was not a creation of a new debt." Evidently, the trial court felt that since the reaffirmation agreement did not create a new indebtedness, no new disclosures needed to be made to the debtor at the time of the reaffirmation. Gutshall urges us to find error in the ruling of the trial court and hold that as a matter of law the reaffirmation agreement was governed both by the Truth-in-Lending Act and the Iowa Consumer Credit Code.

Gutshall contends that we should not focus upon the continuity of the underlying debt through the reaffirmation agreement, but upon whether or not the reaffirmation agreement is a consumer credit transaction or sale within the meanings of Regulation Z, 12 Code of Federal Regulations 226.2(p), promulgated by the Board of Governors of the Federal Reserve System under the authority vested by 15 U.S.C. § 1604, and § 537.1301(12), The Code. Regulation Z, 12 C.F.R. 226.2(p) defines "consumer credit" as "credit offered or extended to a natural person, in which the subject of the transaction is primarily for personal, family, household, or agricultural purposes." Section 537.1301(12), The Code, defines "consumer credit transaction" as a "consumer credit sale or consumer loan, or refinancing or consolidation thereof, or a consumer lease."

■ Gutshall cites Public Information Letter No. 332, Regulation Z, 12 C.F.R. 226.2(k), May 22, 1970:

"As we understand the situation, a debtor who has been discharged from an obligation through bankruptcy may subsequently reaffirm that obligation. Assuming that the appropriate disclosures were made prior to consummation of the original transaction, your question is whether new disclosures need be made upon reaffirmation. In our opinion, since the debtor has been discharged from the obligation in the bankruptcy proceedings, this reaffirmation creates a new debt and should be treated as a new transaction requiring new disclosures."

The weight to be accorded these letters issued by the staff of the Federal Reserve Board has been discussed in *St. Germain v. Bank of Hawaii,* 413 F.Supp. 587 (D.Hawaii 1976). Due to their utility in interpreting the board-promulgated Regulation Z, the court concluded at page 592 of 413 F.Supp.:

"As above indicated, in dealing with the issues herein, then, this court will confer great deference upon the formal interpretation of the Federal Reserve Board. The Board staff opinion letters which point to a reasonable and not inconsistent interpretation of the regulations and show no inconsistency in the event a number of letters deal with the same subject will also be accorded such deference."

This standard of "great deference" to the Federal Reserve Board staff letters, due to the informed experience of the issuing authority, has been adopted by several federal courts, *Philbeck v. Timmers Chevrolet, Inc.,* 5 Cir., 499 F.2d 971, rehearing denied 502 F.2d 1167 (5th Cir.); *Jones v. East Hills Ford Sales, Inc.,* 398 F.Supp. 402 (D.C.Pa.); *Whitman v. Connecticut Bank and Trust Co.,* 400 F.Supp. 1341 (D.C.Conn.).

Acknowledging the great weight to be given the Public Information letters issued by the board staff, a further examination of the staff letters issued regarding Regulation Z and reaffirmation agreements and the Iowa case law regarding reaffirmation agreements and statutorily mandated disclosures requires the adoption of a middle ground between the positions taken by the parties to this action.

In F.R.B. letter No. 415 of October 29, 1970, 4 C.C.H. Consumer Credit Guide ¶ 30,604, we find:

"It is our view that § 226.8(j) which requires new disclosures whenever 'any existing extension of credit is refinanced' would apply to any reaffirmation *except* those which involve no change in the credit terms. For example, if the customer resumed his payments following discharge under the original payment schedule and any payments missed during the bankruptcy proceedings were merely brought up to date or placed at the end of the originally scheduled maturity with no additional finance charge, or simply waived by the creditor, no new disclosures would be necessary. However, if any additional amounts were advanced, additional finance charge imposed, payment amounts reduced, or any other material terms of the original obligation modified, we would view it as a refinancing under § 226.8(j) requiring new disclosures."

The above view is reiterated in F.R.B. letters No. 426 of November 24, 1970, 4 C.C.H. Consumer Credit Guide ¶ 30,613 and No. 966 of December 4, 1975, 4 C.C.H. Consumer Credit Guide ¶ 31,305. Whenever discussion of the topic has gone beyond several sentences, mention is made of the exception for reaffirmation agreements which do not vary the credit terms of the initial agreement.

We have been slow to require the application of statutorily required disclosures to reaffirmation agreements. In *Beneficial Finance Company of Waterloo v. Lamos,* 179 N.W.2d 573 (Iowa 1970), we held there was no violation of § 536.14 which required credit companies to deliver to the borrower *at the time the loan was made* a statement showing in clear distinct terms the lawful maximum rate or rates of interest in effect, the amount and date of the loan and of its maturity, when no such disclosures were made at the time of the reaffirmation. We so held despite the fact that the terms of credit were varied by the reaffirmation agreement. Yet it would appear that when the terms of credit are varied, a new credit obligation is established rather than an old one being reaffirmed and that the purposes behind the required disclosures would mandate a different result.

To require the disclosures mandated by the Iowa Consumer Credit Code and the Truth-in-Lending Act in the reaffirmation context when the terms of credit have been varied is consistent with the stated purpose of the Truth-in-Lending Act: "to assure a meaningful disclosure of credit so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit", 15 U.S.C. § 1601. A similar purpose can be attributed to the Iowa Consumer Credit Code. See *Kenney v. Landis Financial Group, Inc.,* 8 Cir., 349 F.Supp. 939, 944–945 for comparison of the purposes of the Uniform Commercial Code and the Truth-in-Lending Act. A bankrupt faces no legal compulsion to reaffirm a discharged debt. He or she is no different from any consumer in approaching future credit transactions insofar as the Iowa Consumer Credit Code and the Truth-in-Lending Act are concerned. Disclosures which facilitate the "informed use of credit" are no less important to a bankrupt than any other consumer. Past experience would indicate their

heightened value to a recent bankrupt. When a reaffirmation agreement includes terms with which the debtor does not have prior experience, the requirements of the Consumer Credit Code and the Truth-in-Lending Acts must be met. New terms would be indicative of a new extension of credit, akin to a refinancing under § 537.-1301(12). Cf. *Wattles v. Agelastos,* 27 Mich. App. 624, 183 N.W.2d 906, 907–908 (Mich.).

█ The trial court here made no finding concerning any continuity of credit terminology between the initial credit agreement and the reaffirmation. Nor do we find sufficient evidence in the record to make an independent determination. Thus, this case must be remanded for the necessary factual determination and the award of damages if the same are justified.

█ With respect to the possibility of damages, we note that § 537.3201, The Code, makes a violation of the Truth-in-Lending Act a violation of the Iowa Consumer Credit Code. To the extent that damages are awarded under the Truth-in-Lending Act, additional damages may not be awarded under § 537.3201 for the same violation.

If a violation of the Iowa Consumer Credit Code is established under either issue (3) or (4) stated above, § 537.5201(8) requires the award of the costs of the action to the consumer and of reasonable attorney fees to his or her attorney.

In conclusion, we hold that a reaffirmation agreement which varies the credit terms of the original credit agreement must comply with the provision of the Truth-in-Lending Act and the Iowa Consumer Credit Code.

IV. Gutshall further contends the trial court erred in failing to find that the plaintiff Bank gave no notice to him of his right to cure the default as is required by §§ 537.5110 and 537.5111, The Code. The trial court found that the debt collection in this case had commenced prior to July 1, 1974, the effective date of the Iowa Consumer Credit Code, and that chapter 537 had no application to this case. Gutshall

contends chapter 537 is applicable to his default of the reaffirmation agreement and that he should have been informed of his right to cure default.

█ Initially, we note that the outcome of this issue is partially contingent upon the outcome of the factual determination of the third issue stated above. If the credit terms of the reaffirmation agreement vary from those of the initial agreement, then the reaffirmation constitutes a new or independent extension of credit post-dating the effective date of the Iowa Consumer Credit Code. There is no doubt that the Iowa Consumer Credit Code would apply to the transaction and that the plaintiff Bank is, therefore, liable in damages under § 537.-5201(2) for its admitted failure to comply with §§ 537.5110 and 537.5111, The Code.

A more difficult question is presented if there is a continuity of terms between the initial and the reaffirmation agreements. It may be true that the initial collection proceedings were instituted prior to the effective date of the Iowa Consumer Credit Code, but the question confronting us is whether the collection attempt continues to be effective throughout the term of the reaffirmation agreement and its subsequent breach.

In support of the claim of retroactivity of §§ 537.5110 and 537.5111, Gutshall makes reference to an Attorney General's opinion of December 1, 1975 to the effect that the cure provisions of chapter 537 are procedural and thus are to be applied retrospectively. That opinion is based upon the decision of this court in *Walker State Bank v. Chipokas,* 228 N.W.2d 49, 51 (Iowa 1975), where we said:

"The general rule is that it operates prospectively only unless it clearly appears the legislature intended the law to have retrospective effect. However, we recognize an exception to this rule when dealing with matters which are procedural rather than substantive."

The Attorney General's opinion then concludes that notice of right to cure provisions are procedural because "the cure notice re-

quirements do not effect a person's rights in the contract but merely have to do with the procedure that the creditor uses in enforcing his rights." Gutshall also cites *State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330 (Iowa 1976), in which we held that certain sections of the Consumer Frauds Act, § 713.24, The Code, were remedial and are to be applied retrospectively. Gutshall further contends the legislature intended the cure provisions of chapter 537 to be applied retrospectively by providing in § 537.5102, The Code: "This part applies to actions or other proceedings to enforce rights arising from consumer credit transactions . . . ." The plaintiff Bank does not contest the fact that the transaction in question is a "consumer credit transaction" for the purposes of chapter 537, The Code.

Unless these argument can be rebutted by the plaintiff, we find they compel a reversal of the trial court in this case.

Plaintiff Bank, on the other hand, first attempts to distinguish the Attorney General's opinion of December 1, 1975 by contending that the debt collection in this case had begun prior to the effective date of the Iowa Consumer Credit Code (July 1, 1974), and that the Attorney General's opinion dealt only with debt collections which had been initiated subsequent to the effective date of the statute. The Bank's rationale would clearly apply to Gutshall's breach of the initial agreement. It is less obvious when applied to Gutshall's breach of the reaffirmed credit agreement. It is evident the debt collection efforts of the Bank were halted by the execution of the reaffirmation agreement and were then reinitiated upon defendant's default of the reaffirmed agreement. The interaction between the plaintiff Bank and Gutshall involves two defaults and two resulting collection efforts. The Bank's attempt to distinguish the opinion of the Attorney General from the facts in this case is not persuasive.

The Bank next attempts to distinguish *State ex rel. Turner v. Limbrecht*, supra, by first noting that the remedies given the Attorney General by the statute in *Limbrecht* had existed previously in favor of

defrauded parties at common law, and then concluding that since no curative remedy existed prior to the enactment of § 537.-5110, the provision is substantive rather than procedural. Even if we were to concede that § 537.5110 is not procedural, contrary to the contentions of the appellant, it is remedial, and the distinction is of little aid to the Bank. In *In the Matter of the Estate of Parsons*, 272 N.W.2d 16 (1978), while acknowledging the presumption against retroactivity arising from § 4.5, The Code, we cited *Limbrecht* favorably for the proposition that a statute creating a remedy for an existing wrong in the consumer context may be applied retrospectively. In 2 Sutherland Statutory Construction § 41.-09, page 281 (4th ed. 1973), the following appears:

> "Civil laws retroactively adding to the means of enforcing existing obligations are valid. * * *
>
> "A statute providing a remedy where none previously existed is valid, as are statutes providing new remedies and applying them to past transactions."

A different result is not reached if the statute is held to be procedural. See *Walker State Bank v. Chipokas*, supra; 2 Sutherland Statutory Construction § 41.04, page 252 (4th ed. 1973).

The Bank next contends the language of chapter 537 dictates application to debt collection efforts initiated subsequent to the effective date of the Iowa Consumer Credit Code. We have addressed this contention in our comments above regarding the Attorney General's opinion. Even granting the validity of the Bank's contention in this regard, it is difficult for us to find that a single debt collection effort has been in effect since prior to July 1, 1974, even though the time period when the reaffirmation agreement was in effect and not in breach.

We find the arguments of the appellant to be persuasive, when combined with the *Parsons* decision of this court and the relevant provisions of Sutherland set out above, and hold that the notice of right to cure default provisions of §§ 537.5110

and 537.5111 are applicable to reaffirmation agreements which go into default subsequent to July 1, 1974, the effective date of chapter 537. Even though the credit transaction was initially entered into prior to July 1, 1974, § 537.5102, The Code, evidences a legislative intent that the right to cure default provisions apply to "actions or other proceedings to enforce rights arising from consumer credit transactions . ." regardless of when the credit was initially extended. Sections 537.5110 and 537.5111 do not alter the substantive rights of the parties to the credit contract, only the procedure by which a judicial remedy may be obtained upon breach of the credit contract. We, therefore, conclude the trial court erred in not finding the plaintiff violated §§ 537.-5110 and 537.5111. As plaintiff does not controvert the fact of its noncompliance with the aforementioned sections, this case must be remanded for the award of appropriate damages to the defendant pursuant to § 537.5201, The Code.

In conclusion, we hold: (1) the jurisdictional amount permitting appeal is involved in this action; (2) the plaintiff Bank is barred from recovering a deficiency judgment due to its failure to show reasonable notice to the defendant of the time and manner of disposition of the repossessed collateral; (3) the execution of a reaffirmation agreement requires the disclosures mandated by the Iowa Consumer Credit Code and the Federal Truth-in-Lending Act if its terms vary from those embraced in the initial credit agreement; and (4) §§ 537.5110 and 537.5111, The Code, regarding notice of right to cure default, are to be applied retrospectively to include within their coverage credit transactions entered into before July 1, 1974, as to collection proceedings initiated or reinitiated after that date.

This case is, therefore, reversed and remanded for a comparison by the trial court of the initial and reaffirmation credit agreements and the award of appropriate damages in favor of the defendant.

REVERSED AND REMANDED WITH DIRECTIONS.