**IPALCO EMPLOYEES CREDIT UNION, Appellant,**

v.

**Earl D. CULVER, Sr., and Opal V. Culver, Appellees.**

No. 65131.

Supreme Court of Iowa.

Aug. 26, 1981.

Rehearing Denied Sept. 17, 1981.

Robert G. Riley of Duncan, Jones, Riley & Finley, Des Moines, for appellant.

R. E. Feilmeyer of Taylor, Taylor & Feilmeyer, Guthrie Center, for appellees.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN, and SCHULTZ, JJ.

REYNOLDSON, Chief Justice.

Plaintiff IPALCO Employees Credit Union (IECU) sued defendants Earl D. Culver, Sr., and Opal V. Culver (Culvers) for $4,908.20 on an admittedly unpaid promissory note. IECU succeeded in having summary judgment rendered against it for $3400 for failure to comply with provisions of the Iowa Consumer Credit Code (ICCC), chapter 537, The Code. IECU appeals from trial court's orders dismissing its action and awarding Culvers damages and attorney fees. Culvers cross-appeal from trial court's failure to dismiss the action with prejudice and its failure to award greater damages and attorney fees. Additionally, they ask for attorney fees for this appeal. We reverse and remand with directions.

The Culvers executed and delivered their promissory note to IECU February 14, 1961, and made periodic payments until July 1, 1971. July 1, 1974, the Iowa Consumer Credit Code became effective. *See* 1974 Session, 65th G.A., ch. 1250.

May 25, 1978, IECU commenced this action, seeking judgment for the balance due on the note, accumulated interest, and statutory attorney fees. IECU served no "notice to cure" pursuant to section 537.5111, The Code, nor did its petition indicate how the amount in default was determined as required by section 537.5114, The Code.

Answering, Culvers relied on chapter 537 defenses, estoppel, and the statute of limitations. Their counterclaim alleged violations of sections 537.5110–.5111 (notice to cure), section 537.5114 (computation of amount due), and section 537.2507 (prohibition of attorney fees provisions). Culvers prayed for actual damages and penalties, section 537.5201(1), and attorney fees and costs, section 537.5201(8).

IECU's reply to counterclaim asserted that application of chapter 537 provisions to this prior defaulted note would violate article I, section 10, of the United States Constitution, which prohibits state laws impairing the obligation of contracts. Ruling on IECU's subsequent application for separate adjudication of law points, the district court, Judge Crouch presiding, held that the ICCC did not apply in this case because "[t]o construe Chapter 537 as to give it retrospective operation in this case would be in violation of the . . . U.S. Constitution and the Iowa Constitution." January 4, 1979, we denied Culvers' application for interlocutory appeal.

Following our decision in *Northwest Bank and Trust Co. v. Gutshall*, 274 N.W.2d 713 (Iowa 1979), Culvers filed motion for summary judgment, realleging IECU's noncompliance with the ICCC. District court, Judge Crouch again presiding, overruled this motion.

March 19, 1980, Culvers filed a "Request of Court to Reverse and Overrule Prior Ruling." April 22, 1980, district court, Judge Critelli presiding, after determining the court was authorized to modify or change its own ruling or the ruling of another judge on the same court, ruled that

under *Gutshall* the relevant ICCC provisions could be applied retroactively, and that there were no constitutional violations. Accordingly, the court dismissed IECU's petition without prejudice and sustained Culvers' motion for summary judgment as to plaintiff's claim. May 19, 1980, trial court entered an order sustaining Culvers' motion for summary judgment on the counterclaim. It awarded Culvers $100 actual damages, a $100 penalty for each of the three violations of ICCC provisions, and $3000 in attorney fees, a total of $3400.

Appealing, IECU asserts trial court erred in applying chapter 537 to this note because (1) the ICCC was not intended to be retrospectively applied, (2) retrospective application would violate constitutional prohibitions against state laws impairing the obligations of contracts, and (3) Culvers neither pled nor proved the note was a consumer credit transaction. Cross-appealing, Culvers contend (1) IECU's petition should have been dismissed with prejudice, (2) the penalties awarded were insufficient and should have been awarded separately to each defendant, (3) the attorney fee award was inadequate, and (4) defendants should be awarded attorney fees for this appeal.

I. *Should the ICCC be Applied Retrospectively?*

IECU argues that, *Gutshall* notwithstanding, it was not the legislative intent that the ICCC provisions be applied retrospectively. It relies on section 4.5, The Code, adopted in 1971:

A statute is presumed to be prospective in its operation unless expressly made retrospective.

§ 4.5, The Code. Culvers assert this claim never was advanced in trial court. However, we find the issue was raised in the district court controversy surrounding interpretation of *Gutshall*, which did not purport to turn on the constitutional issue.

Following enactment of section 4.5, and without reference to it, we have held remedial statutes are to be applied retrospectively. *Jones v. Bowers*, 256 N.W.2d 233, 235 (Iowa 1977); *State ex rel. Turner v. Lim-*

brecht, 246 N.W.2d 330, 332–33 (Iowa 1976); cf. *Walker State Bank v. Chipokas*, 228 N.W.2d 49, 51–52 (Iowa 1975) (rule of civil procedure). In *In re Estate of Parsons*, 272 N.W.2d 16, 19 (Iowa 1978), the majority analyzed a number of these decisions, noting that in several the statutes applied retrospectively actually created an additional remedy, or dealt with "remedy" in the strict sense of that term, and did not "reduce or eliminate a right a person had."

■ In any event, it is obvious trial court's retroactive application of ICCC in this case deprived IECU of rights it had when the ICCC was adopted: the right to attorney fees and the right to sue without giving a notice to cure on a note seven years delinquent.

Aside from general principles that influence the retrospective-prospective determination, it is clear that in the final analysis we look to the legislative intent in the particular enactment. *Limbrecht*, 246 N.W.2d at 333; *Chipokas*, 228 N.W.2d at 51.

■ The language of section 537.2507, relied on by Culvers, indicates a legislative intent that the act was to have a prospective operation only:

With respect to a consumer credit transaction, the agreement may not provide for the payment by the consumer of attorney's fees. A provision in violation of this subsection is unenforceable.

§ 537.2507, The Code 1981. When ICCC was adopted, the legislature must have known there were thousands of outstanding contracts and notes in Iowa that provided for attorney fees to be paid by the consumer. Therefore, the mandate of section 537.2507 that "the agreement *may not provide* for the payment by the consumer of attorney's fees" (emphasis added) was obviously designed to control future agreements, not existing contracts with attorney fee clauses. We further find the reference in the last sentence of section 537.2507 to a "violation of this subsection" refers to an agreement arising after adoption of the act and containing a prohibited attorney fee provision.

Our determination that the legislature did not intend the ICCC to have retrospective application is fortified by the history of this enactment in Iowa. We may resort to this source of information. *See Burke v. Board of Trustees*, 308 N.W.2d 21, 24 (Iowa 1981).

In *Norton v. Local Loan*, 251 N.W.2d 520, 522 (Iowa 1977), we note that chapter 537 "is a uniform act and its language was adopted rather than drafted by the legislature." It was reported out of the Senate Committee on Commerce as Senate File 1405 and became chapter 1250 of the Acts of the 65th General Assembly, 1974. The following statement appears as a part of the explanation to the bill:

This bill enacts a Consumer Credit Code for the state of Iowa which is based upon the Uniform Consumer Credit Code. The format of the Uniform Act is retained, but various provisions are amended, modified or essentially rewritten.

S.F. 1405, at 114. One of the provisions in the Uniform Consumer Credit Code that was deleted by the Iowa legislature was the following portion of article 9, entitled "Effective Date and Repealer":

§ 9.101 . . .

. . . .

(3) . . . this Act applies to:

. . . .

(c) all credit transactions entered into before this Act takes effect insofar as the Article on Remedies and Penalties (Article 5) limits the remedies of creditors.

Uniform Consumer Credit Code § 9.101(3)(c), 7 Uniform Laws Ann., Bus. & Fin. Laws (1978); Uniform Consumer Credit Code, § 9.101(3)(c) (Tent. Final Draft No. 5, Nov. 1973) (CCH). We can only conclude the legislature deliberately elected to reject these provisions, which would have made the ICCC sections that Culvers rely on retrospective in operation. An overview of the legislative history of the ICCC and its language above analyzed convinces us the legislature intended the act to apply only prospectively.

Nor do we believe *Gutshall* is controlling here. In *Gutshall* the defendant maker of a promissory note executed a "reaffirmation agreement" to the plaintiff bank after the original debt was discharged in his bankruptcy proceedings. The promissory note was executed before adoption of the ICCC; the reaffirmation agreement was executed after the ICCC became law. Gutshall's contention was that the ICCC and the Federal Truth-in-Lending Act were applicable because the reaffirmation agreement established a new credit obligation.

We initiated our analysis of the notice-to-cure issue with the observation that "Gutshall contends chapter 537 is applicable to his default *of the reaffirmation agreement* and that he should have been informed of his right to cure default." *Gutshall*, 274 N.W.2d at 721 (emphasis added). We held that "the notice of right to cure default provisions of §§ 537.5110 and 537.5111 are applicable to reaffirmation agreements which go into default subsequent to July 1, 1974, the effective date of chapter 537." *Id.* at 722–23. That holding disposed of the issue before us, but in a summarizing statement we said the notice-to-cure provisions "are to be applied retrospectively to include within their coverage credit transactions entered into before July 1, 1974, as to collection proceedings initiated or reinitiated after that date." *Id.* at 723. We now are convinced that statement plunged beyond the issues before us in *Gutshall* and would nullify the legislature's intent when it enacted the ICCC. We overrule any language in *Gutshall* that does not conform to our holding in this case.

II. *Disposition of Remaining Issues.*

Our holding in division I, that the ICCC has no application in this case, makes it unnecessary to consider the other issues raised by these parties. Trial court was in error in rendering summary judgment on IECU's claim and Culvers' counterclaim. The claim must be reinstated. The judgments must be set aside and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.