MONTGOMERY WARD, INC., Appellee,

v.

Peggy A. DAVIS, Appellant.

No. 85–1147.

Supreme Court of Iowa.

Jan. 14, 1987.

Joseph L. Marks of Marks, Marks & Marks, Urbandale, for appellant.

William C. Purdy of Stennes and Siddens, P.C., Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, WOLLE, LAVORATO, and NEUMAN, JJ.

WOLLE, Justice.

Plaintiff Montgomery Ward, Inc. (Ward) brought this law action against defendant Peggy Davis for $1,596.61, claiming she had defaulted on payments owed for furniture bought on credit. In her answer and counterclaim asking for actual damages, a statutory penalty, attorney fees and costs, Davis asserted that any obligation on her part was unenforceable because Ward had failed to provide her with statutory notice of her right to cure the default. Iowa Code §§ 537.5110, .5111 (1981). A jury returned a general verdict for Ward and by answer to a special interrogatory found that Ward had given Davis proper notice of the right to cure the default. Davis appealed, we transferred the case to the court of appeals, and that court in a two to one decision reversed the trial court's judgment on the ground Ward had offered insufficient evidence that it mailed the notice to cure. On further review, we find sufficient evidence to support the jury's finding that the computer-generated notice was mailed to Davis. We vacate the decision of the court of appeals and affirm the judgment of the district court.

■ We have jurisdiction to decide this case under Iowa Rule of Appellate Procedure 3 because the amount in controversy disclosed by the record is at least $3,000. We held in *Northwest Bank and Trust Co. v. Gutshall*, 274 N.W.2d 713, 716–17 (Iowa 1979) (*overruled on other grounds, IPAL-CO Employees Credit Union v. Culver*, 309 N.W.2d 484, 487 (Iowa 1981)), that the amount in controversy in consumer credit cases like this includes the aggregated amounts on which judgment could have been entered on either the claim or counterclaim, including penalties, attorney fees and court costs which inhere within the cause of action. *Gutshall*, 274 N.W.2d at 716. When a demand for attorney fees is not specified in the pleadings, we "examine the record before us to determine whether

judgment could have been entered for the requisite amount." *Ackerman v. International Business Machines Corp.*, 337 N.W.2d 486, 488 (Iowa 1983); *In re Gabeline*, 288 N.W.2d 341, 344 (Iowa 1980). We have jurisdiction in this case because the trial court could have entered judgment for Davis for as much as $3,000 on her demand for a statutory penalty, attorney fees and court costs.

■ We turn to Davis's contention, upheld by the court of appeals, that she was entitled to a directed verdict because Ward failed to prove it mailed her a notice to cure. Ward's right to enforce Davis's obligation arising from this consumer credit transaction was contingent on its fulfilling the notice requirement of Iowa Code section 537.5110 which provides:

1. Notwithstanding any term or agreement to the contrary, the obligation of a consumer in a consumer credit transaction is enforceable by a creditor only after compliance with this section.

2. A creditor who believes in good faith that a consumer is in default may give the consumer written notice of the alleged default, and, if the consumer has a right to cure the default, shall give the consumer the notice of right to cure provided in section 537.5111 before exercising any right he may have to enforce.

That notice requirement is satisfied when the creditor "delivers the notice to the consumer or mails the notice to him at his residence...." Iowa Code § 537.5111(3). The creditor has the burden to prove by a preponderance of the evidence that the notice was given. *Public Finance Co. v. Van Blaricome*, 324 N.W.2d 716, 718 (Iowa 1982). Proof that a document was properly mailed raises a presumption that it was received. *Reserve Insurance Co. v. Johnson*, 260 Iowa 740, 744, 150 N.W.2d 632, 634 (1967). The party relying on that presumption, however, must offer evidence to satisfy six foundational facts concerning mailing of the written notice. There must be evidence:

1) Of the contents and execution of the paper;

2) That it was enclosed in a wrapper or otherwise prepared for transmission through the mail;

3) Of the correct address of the person to receive it;

4) That the wrapper was properly addressed;

5) That postage was prepaid; and

6) That the article was deposited in the mail.

*Van Blaricome,* 324 N.W.2d at 718–19 (quoting *Central Trust Co. v. City of Des Moines,* 205 Iowa 742, 746, 218 N.W. 580, 582–83 (1928)). In *Van Blaricome,* we held that testimony of office custom may provide sufficient foundation to raise a presumption that mailed notices were in fact received. 324 N.W.2d at 720–21 (listing cases holding office custom sufficient to prove mailing even in the absence of evidence concerning the particular mailing in question).

It is noteworthy that Davis in this appeal does not challenge any particular evidentiary ruling of the trial court but only the court's denial of her motion for directed verdict. In determining whether there was sufficient evidence to overcome Davis's motion for directed verdict we consider the evidence in the light most favorable to Ward. *See Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986).

The evidence relied on by Ward consisted of the testimony of its credit supervisor Gary Ness, its account representative Patti Lamberti, and the testimony of Davis herself.

As a Minneapolis office supervisor of delinquent accounts, Ness testified he was familiar with the computer system used by Ward in 1981. According to Ness, all Ward offices throughout the midwest had access to identical computer screens containing collection information that, when entered by an account representative and accepted by the system, could not afterwards be removed from it. Ness stated he had access in the ordinary course of business to information concerning the delinquent Davis account. He thoroughly explained a computer printout displaying that

information. The printout, which he described as a reproduction of a microfilmed collection screen, shows that on December 28, 1981 one P. Lamberti entered a request for a notice to cure letter, and it further shows that a letter containing appropriate information was generated by the machine. Ness explained that earlier billing statements addressed to the same address as that shown on the collection screen and admittedly received by defendant were produced in the same way by the computer.

Des Moines account representative Patti Lamberti explained the procedure in effect in her office in 1981 for sending letters, including notices to cure, to those with delinquent accounts. She remembered entering into her terminal a request that a notice to cure letter be sent to Davis. She explained that the central office computer then would have actually typed and mailed the letter. Lamberti testified that to accomplish mailing of the notice to cure she entered into the computer four basic types of information: the code "N5A" indicating the type of letter requested, the amount of money necessary to bring the account current, the date of the request, and a deadline date twenty days from then. Lamberti admitted she had no actual knowledge that the letter was typed and sent to Davis, but she said if she had failed to supply the computer with the appropriate information, the computer "wouldn't take":

> If a computer for some reason wouldn't take they come to us and we re-send it that next day if the system had a problem in it somehow or something, they get a great log of letters, if it would not take, and what we do is we input it right then and there with the manager to make sure it goes out, and it stops if you would accidentally send two letters out. The computer has both of them and it has a built-in memory to catch mistakes, so if something happens and it doesn't work we get a print-out of ones that don't take, and we re-input it the next day.

Davis maintains she was entitled to a directed verdict because the record con-

tains insufficient evidence to satisfy the six *Van Blaricome* factors concerning mailing of the notice. We disagree. Although Ward presented no direct evidence of the process by which the notice to cure was mailed, the jury reasonably could infer from circumstantial evidence that the computerized system operated the way its witnesses described. So too could the jury conclude that Davis received the mailed notice document at the address she had given Ward just as she had there received the earlier computer-generated mailings. Lamberti did testify that she operated the computer in such a way as to send the notice to cure to the address at which Davis had earlier received correspondence from Ward. Ness corroborated that testimony through his reading of the computer printout. The testimony Ward provided was the equivalent of testimony concerning office practice that we found sufficient in *Van Blaricome*, 324 N.W.2d at 720.

The test for measuring the sufficiency of circumstantial evidence is "whether the state of affairs sought to be established ... may be usually and generally inferred from the facts shown." *Waterbury v. State*, 387 N.W.2d 309, 312 (Iowa 1986) (quoting *Stenberg v. Buckley*, 245 Iowa 622, 627–29, 61 N.W.2d 452, 455–56 (1953)); *see Harsha v. State Savings Bank*, 346 N.W.2d 791, 800 (Iowa 1984); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 338, at 791 (2nd ed. 1972) (directed verdict ruling "must necessarily rest on [the judge's] individual opinion, formed in the light of his own common sense and experience, as to the limits of reasonable inference from the facts proven.").

Because Davis contends she was entitled to a directed verdict, we have reviewed all of the evidence in this case in the light most favorable to Ward, including the circumstantial evidence concerning functioning of the computer system used to generate previous notices as well as this notice to cure. We find sufficient support for all six foundational factors necessary to prove mailing and raise a presumption of receipt of the written notice. This record therefore contained substantial evidence to support the jury's ultimate determination that

Ward gave Davis written notice of her right to cure the default.

DECISION OF COURT OF APPEALS VACATED AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

I cannot agree that the amount in controversy on this appeal is $3000 or more. Iowa rule of appellate procedure 3 requires that "no appeal shall be taken in any case, not originally tried as a small claim, where the amount in controversy, as shown by the pleadings, is less than three thousand dollars...." Iowa R.App.P. 3. The plaintiff's petition sought only $1596.61. As we have previously held, the amount of a plaintiff's claim may not be aggregated with a defendant's counterclaim in an attempt to meet our jurisdictional amount requirement, if neither alone is sufficient to confer jurisdiction. *Bridal Publications, Inc. v. Richardson*, 229 N.W.2d 771, 774 (Iowa 1975).

On these facts, neither the defendant's $2500.00 counterclaim nor the plaintiff's $1596.61 claim would alone be sufficient to satisfy our jurisdictional minimum. The counterclaim should not be considered at all. Defendant does not appeal from the dismissal of her counterclaim. She asks, in addition to a reversal of plaintiff's judgment against her, only for assessment of a penalty of "not less than $100 nor more than $1000, ... costs of the action and ... reasonable attorney fees."

This court has said that the appropriate test for determining whether the requisite jurisdictional amount is controverted is "whether the trial court could have entered judgment against any party for more than the jurisdictional minimum amount." *Northwest Bank & Trust Co. v. Gutshall*, 274 N.W.2d 713, 716 (Iowa 1979), *overruled on other grounds, IPALCO Employees Credit Union v. Culver*, 309 N.W.2d 484 (Iowa 1981); *Benttine v. Jenkins Truck Lines, Inc.*, 182 N.W.2d 374 (Iowa 1970). In determining the amount in controversy, the pleadings are determinative. *Bridal*

*Publications, Inc.,* 229 N.W.2d at 774; *Liberty Loan Corp. of Dubuque v. Fassbinder,* 176 N.W.2d 158, 159 (Iowa 1970). Costs of an action are not considered in determining the jurisdictional amount where they "are merely incidental to the action [and] are not shown by the pleadings...." *Bridal Publications, Inc.,* 229 N.W.2d at 774.

The majority holds that the jurisdictional amount can be reached by speculating that unspecified attorney fees might raise the stakes to $3000. *See Northwest Bank & Trust Co.,* 274 N.W.2d at 716 (attorney fees sought under the Iowa consumer code which could be computed from the pleadings were considered under rule of appellate procedure 3).

The majority in this case cannot, except by pure speculation wholly outside the pleadings, say what the fees might be in this case. The lesson seems to be that any demand for reasonable attorney fees can satisfy the jurisdictional amount required under rule 3. I do not think such an unspecified demand should render rule 3 meaningless.

The pleadings here simply do not show that the amount in controversy amounts to $3000. We lack jurisdiction for the appeal and should dismiss it.