BENTON COUNTY, Iowa, Appellee,

v.

Ella E. WUBBENA, as Fiduciary of the
Conservatorship of Russell E.
Frank, Appellant.

65048.

Supreme Court of Iowa.

Jan. 14, 1981.

Robert Himschoot of Himschoot & Meyer,
Dysart, for appellant.

Mark Mossman, County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

McCORMICK, Justice.

This appeal concerns a county's right to be reimbursed from conservatorship assets for funds paid for the ward's care at the Woodward State Hospital-School. The trial court ordered reimbursement for the five-year period preceding the making of the claim. Upon the conservator's appeal, we affirm.

The ward is Russell E. Frank, born in 1941. The record shows he lived at home until 1970 when his mother's health began to fail. After evaluation at the mental health institute in Clarinda, he was admitted to Woodward from Benton County as a mentally retarded person on June 12, 1970.

The trial court found he was admitted on a voluntary basis. That same year Russell's sister, Ella Wubbena, was appointed conservator.

From various sources, the conservatorship accumulated assets of approximately $53,500 by December 1970. In addition, the conservator received a monthly social security check of $229 for Russell. Alleging expenditures of $106,543.33 for Russell's care from June 12, 1970, through September 30, 1979, the county filed a claim in the conservatorship in December 1979, seeking reimbursement in that amount. The claim was subsequently increased to $113,348.24 to include payments through December 31, 1979. Resisting the claim, the conservator alleged liability was barred because of the failure of the board of supervisors to find the ward was able to pay for his care. She also alleged the bar of the five-year statute of limitations in section 614.1(4), The Code.

After trial, the court held that the statute of limitations barred the claim for expenditures prior to 1974. As to the subsequent five-year period, the court held that the county was entitled to reimbursement for the sums advanced, which totaled $86,717.44. Judgment was entered against the conservator for that amount, and this appeal followed.

The conservator raises two questions, but we find only one of them is material. She contends the trial court erred in finding her ward was voluntarily admitted to Woodward, and she alleges the court also erred in allowing the claim despite the county's failure to comply with statutory changes relating to liability for care of mental retardates in state institutions.

■ The conservator concedes that the outcome of this case cannot be affected by whether the initial admission to Woodward was voluntary. The issue of liability is the same whether the admission was voluntary or involuntary. *Compare* §§ 222.13, .31, and .78, The Code 1966, *with* §§ 222.13, .31(4), and .78, The Code 1979. Therefore we do not reach the conservator's first assignment of error.

The second assignment involves an issue of statutory interpretation. When the ward was admitted to Woodward in 1970, the applicable statutes did not require a finding concerning the ability to pay of the persons statutorily liable for the care. *See* §§ 222.13, .31, and .78, The Code 1966. The recipient of the care was among those liable under section 222.78.

In 1976, however, the legislature amended Code chapters 125, 222 and 230 to alter provisions relating to liability imposed for state institutional care of alcoholics, retarded persons, and the mentally ill. *See* 1976 Session, 66th G.A., ch. 1104. Sections 222.13 and 222.31 were changed by this amendment. Effective July 4, 1976, section 222.13 provided in relevant part:

Upon applying for admission of a person to a hospital-school, or a special unit, the board of supervisors shall make a full investigation into the financial circumstances of that person and those liable for his or her support under section 222.78, to determine whether or not any of them are able to pay the expenses arising out of the admission of the person to a hospital-school or special treatment unit. If the board finds that the person or those legally responsible for him or her are presently unable to pay such expenses, they shall direct that the expenses be paid by the county. The board may review its finding at any subsequent time while the person remains at the hospital-school, or is otherwise receiving care or treatment for which this chapter obligates the county to pay. If the board finds upon review that that person or those legally responsible for him or her are presently able to pay such expenses, that finding shall apply only to the charges so incurred during the period beginning on the date of the review and continuing thereafter, unless and until the board again changes its finding. If the board finds that the person or those legally responsible for him are able to pay the expenses, they shall direct that the charges be so paid to the extent required by section 222.78, and the county auditor shall be responsible for the collection thereof.

The amendment added a similar provision to section 222.31 for involuntary commit-

ments. *See* § 222.31(4). However, in that situation the county attorney conducts the investigation and the district court makes the necessary findings.

Because the investigations and determinations of ability to pay are initially triggered by original admission or commitment proceedings, the amendments do not expressly apply to proceedings which occurred prior to their effective date. Nevertheless, the conservator contends the legislature intended to eliminate all uncollected accounts as of that date and to condition all future liability on a prior determination of ability to pay. We find nothing in the amendments to support her contention.

■ Statutes operate prospectively only unless legislative intent that they be given retrospective operation clearly appears from the express language of the act or by necessary implication. *In re Estate of Parsons*, 272 N.W.2d 16, 17 (Iowa 1978). In the present situation, the conservatorship was admittedly liable for the ward's care to the date of the amendments, subject to the five-year period of limitations in section 614.1(4). *See* § 222.82. Unless the amendment of a statute provides otherwise, it does not affect a liability which has previously accrued. § 4.13(2); *Parsons*, 272 N.W.2d at 19. Nothing in the present amendments provides otherwise either expressly or by necessary implication. Exceptions dealing with remedial or procedural changes do not apply here. Thus, the amendments plainly did not erase existing liability.

Moreover, nothing in the language of the amendments expressly or impliedly manifests an intention to apply them to prior admissions or commitments from that date forward. Although provision is made for the board or court to review "its finding," that is the finding which is triggered by the original proceeding.

■ The conservator relies on an accompanying amendment to section 230.25. That amendment gave the board of supervisors until January 1, 1977, to review statutory liens for the care of mentally ill persons, make determinations of ability to pay, and, when ability to pay was found, commence an action to enforce them. All liens not resulting in actions under this provision before January 1, 1977, were abolished. This amendment has no application in the present case. It relates only to liens for care of the mentally ill, not liability for care of retarded persons, and even then purports only to affect liens rather than underlying liability.

The drafters' explanation attached to the original bill containing the amendments included a statement which the conservator relies on as showing a contrary intention. In stating their purpose, the drafters said:

> Third, a method is provided at the time persons are admitted or committed to certain institutions or facilities whereby it can be determined whether in fact those persons or persons legally responsible for payment of such charges are able to pay them. If so procedure is provided for collections of such charges, but if not the county is directed to pay them and the auditor's books are not cluttered with uncollectable accounts. As matters now stand there are probably thousands of uncollectable accounts outstanding, and as a result in many cases little or no effort is made to collect any account. While it is recognized that in all probability some accounts will remain uncollected, it is hoped that the number will be reduced and a greater effort will be made to collect those certified as being collectable.

1975 Session, 66th G.A., H.F. 292. This statement is entirely consistent with our finding that the relevant amendments to chapter 222 only affected accounts for admissions or commitments subsequent to July 4, 1976.

The county's claim in the present case was not affected by the amendments. We find no merit in any of the conservator's arguments to the contrary.

AFFIRMED.