Donald F. JANDA, Appellee,

v.

IOWA INDUSTRIAL HYDRAULICS,
INC., and Indag Iowa Incorporated,
Appellants.

No. 67351.

Supreme Court of Iowa.

Nov. 24, 1982.

John Cook, Jr., of Herrick, Ary, Cook & Cook, Cherokee, for appellants.

David A. Scott of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

REYNOLDSON, Chief Justice.

Defendants Iowa Industrial Hydraulics, Inc. (Iowa Industrial), and Indag Iowa Incorporated (Indag) appeal from a district court judgment awarding plaintiff Donald F. Janda damages allegedly arising out of an oral employment contract. We affirm in part, reverse in part, and remand with directions.

Iowa Industrial was an Iowa corporation that manufactured hydraulic products at Pocahontas, Iowa. Early in 1977 it decided to establish a marketing arm to sell a crane it had designed, and a line of German trac-tors. Janda, responding to Iowa Industrial's search for a sales and marketing manager, interviewed plant officials at Pocahontas on June 29, 1977. Janda later concluded he did not want to move his family from a larger Illinois town to Pocahontas, particularly in view of the limited housing available. In a telephone call initiated by Iowa Industrial's personnel manager, Janda declined the employment. However, the company's representative assured him that "[m]anagement has decided that they are going to open this new [sales] division in ... Spencer, and we'd like you to come back and have another interview." Upon Janda's return for the second interview, Iowa Industrial arranged for him and his wife to visit Spencer. The parties discussed Janda's proposed pay, benefits, and a "company car" for his use. He was assured the new venture in Spencer would be financed adequately by Iowa Industrial until it was self-supporting, estimated to take two or three years.

There was substantial evidence to support trial court's finding that Janda was persuaded to accept this employment by Iowa Industrial's promise to locate the new sales division in Spencer in the fall of 1977, and to furnish him a company car. July 16, 1977, Janda began working for Iowa Industrial and was provided a leased vehicle. He stayed at Pocahontas while searching for a Spencer house to purchase. October 15, 1977, Janda moved his family to their Spencer home. October 31, 1977, Iowa Industrial, complaining about the expense, took Janda's leased vehicle from him. Without this vehicle, Janda had to drive the family car to Pocahontas to work.

Iowa Industrial kept postponing the establishment of the separate sales office in Spencer. Indag was incorporated as a subsidiary in October 1977. It was owned by Iowa Industrial and was designed to perform "purely a marketing function." Indag's board of directors was comprised of the inside directors of Iowa Industrial. Indag had no assets of its own. Its presence in Spencer was limited to a Spencer phone number directly linked to Iowa Industrial at

Pocahontas, and a Spencer mailbox. Iowa Industrial paid Janda's salary through May 1978. Thereafter his compensation was paid by Indag.

Iowa Industrial decided to terminate its sales venture early in 1979. Its president, however, admitted that when Janda inquired whether he should start looking for other employment, he was told he should "continue in working toward a marketing position with us." It was never suggested to Janda that he seek work elsewhere before his employment was terminated June 8, 1979.

Janda filed this action for various damages claimed to have been occasioned by Iowa Industrial's alleged breach of an oral employment agreement. Trial court disallowed all claims except those relating to Janda's transportation to Pocahontas, granting him judgment for $9140.20 "together with interest . . . at the legal rate from the date of this judgment."

Janda filed a post-trial motion to modify the judgment interest, alleging that under Iowa Code section 535.8 (1981), judgment interest at the new rate should be computed from the date the petition was filed. Over defendants' resistance, trial court granted the motion and modified the judgment accordingly.

Appealing, Iowa Industrial and Indag assert trial court erred in several particulars, which may be consolidated into the following issues: (1) Are damages available to an employee at will as a result of a change in anticipated working location or other circumstances? (2) Should trial court have made both Iowa Industrial (primarily) and Indag (secondarily) responsible for the full amount of the judgment for Janda's damages? (3) When Janda's petition was filed before the effective date of Iowa Code section 535.3 (1981) but the judgment entered after the effective date, should trial court have awarded interest from the date of filing the petition?

■ This was a law action tried to the court. Thus trial court's findings of fact are binding here if supported by substantial evidence. Iowa R.App.P. 14(f)(1). "A finding of fact is supported by substantial evidence if the finding may reasonably be inferred from the evidence." *Briggs Transportation Co. v. Starr Sales Co.,* 262 N.W.2d 805, 808 (Iowa 1978). In case of ambiguity the evidence is construed to uphold rather than to defeat trial court's judgment. *Pillsbury Co. v. Ward,* 250 N.W.2d 35, 38 (Iowa 1977).

## I. *Rights of an Employee at Will.*

The oral employment contract before us was indefinite as to duration. Ordinarily the employment of an employee at will may be terminated by either party at any time. *Abrisz v. Pulley Freight Lines, Inc.,* 270 N.W.2d 454, 455 (Iowa 1978); *Harper v. Cedar Rapids Television Co.,* 244 N.W.2d 782, 791 (Iowa 1976); 53 Am.Jur.2d *Master and Servant* § 43, at 117–18 (1970).

Iowa Industrial and Indag argue that even if Janda was promised company transportation and his employment would be at Spencer, the employment contract, which was terminable at will, could be modified at any time. Janda's alternatives, they assert, were to accept the modifications or quit, and his decision to continue to work resulted in his acceptance of the modifications as a matter of law. There is substantial legal support for this general rule. *See Gebhard v. Royce Aluminum Corp.,* 296 F.2d 17, 19 (1st Cir.1961); *Moody v. Bogue,* 310 N.W.2d 655, 661 (Iowa Ct.App.1981), and citations.

■ The facts of this case, however, take it out of the general rule. Commuting expense to Pocahontas was not a part of the initial oral employment contract because it was contemplated by both parties that the sales division would be located in Spencer as of "the fall" of 1977. Thus there was no "modification" of the original agreement in this regard. Nor was there any modification relating to the contemplated place of employment. Rather, the moving date simply was delayed, and meanwhile Janda was forced to use his own transportation to travel to Pocahontas. He testified without contradiction that Iowa Industrial and Indag officers told him "we will take care of

it"; that they would take care of this expense "down the road."

In these circumstances we find trial court's ruling supported by the principle that an employee may recover for " 'extra services, even when of a character to come within the scope of the employment, upon proof of facts short of an express promise to pay therefor, but from which such a promise may be implied.' " *Drake v. Block,* 247 Iowa 517, 523, 74 N.W.2d 577, 581 (1956) (quoting *McGuire v. Interurban Railway Co.,* 199 Iowa 203, 211, 200 N.W. 55, 59 (1924)); *see* 56 C.J.S. *Master and Servant* § 100, at 533 (1948) (promise to pay commuting expense may be implied). Here the officers of Iowa Industrial and Indag kept delaying the move to Spencer contrary to the representations made to Janda when he accepted the employment. Their actions in depriving him of company transportation and indicating to Janda he would be compensated for the use of his own car minimally permits the conclusion there was an implied promise to reimburse him for the reasonable expense incurred.

Such commuting expense might also be considered as Janda's damages for breach of the employment contract in failing to move the sales division to Spencer. In this regard the record discloses no clear-cut modification of the agreement that would invoke the general rule that Janda, by continuing to work, accepted a change in the contract as a matter of law.

■ Trial court's ruling makes it apparent that the total judgment of $9140.20 was comprised of $4825.60 for costs of actual mileage traveled between Spencer and Pocahontas at sixteen cents per mile, $1650 and $850 for two vehicles purchased, $1689.60 for repairs to the family car, and $125 for a car leased while another was being repaired. Janda had only one car for his family, and the evidence makes clear the two vehicles were purchased so that his family could have transportation, although each was sometimes used for his travel. Repair cost to the vehicles, and lease expense, clearly would be duplicative and excessive, over and above the flat mileage

rate the parties agreed was the accepted rate for transportation expenses incurred for company business. We therefore hold the judgment can be sustained in the amount of $4825.60 only.

Iowa Industrial and Indag further seek to limit the judgment to the extent that Janda would have traveled to Pocahontas to report to company officers and other purposes. We find no evidence the implied promise was so limited. Iowa Industrial and Indag successfully objected to exhibits from which further refinements could be computed. We have held that persons damaged by a breach of contract

> were not required to prove their damages with mathematical precision. It was their duty only to establish their claim with some reasonable measure of certainty and to show facts affording a reasonable basis for ascertaining the loss.

*Conrad v. Dorweiler,* 189 N.W.2d 537, 540 (Iowa 1971); *see Palmer v. Albert,* 310 N.W.2d 169, 174 (Iowa 1981) ("damages should not be denied merely because the amount is difficult to ascertain so long as the fact that some damages were sustained is evident").

We find no substantial evidence to support trial court's finding of damages beyond the sum of $4825.60, and upon remand the damages should be reduced to this amount.

II. *Respective Liability of Iowa Industrial and Indag.*

Trial court provided that Iowa Industrial was primarily liable, and Indag was secondarily liable, for the full amount of the judgment. These companies argue there was a modification of the employment agreement involving a change of employer. They point out that Janda was paid directly from Indag's bank account from May 1978, to the termination of his employment. For this and other reasons, they contend, he was fully aware of the modification. They assert that by continuing in the employment, Janda is deemed to have accepted Indag as a new employer and to have terminated the relationship existing with Iowa Industrial. They rely on *Yoselowitz v. Peoples Bakery,*

*Inc.,* 201 Minn. 600, 602–03, 277 N.W. 221, 223 (1938).

*Yoselowitz* is inapposite on the basis of its facts. There the employing bakery was closed and went out of business. Another was started at a new location. The employee went to the new business location to apply for, and secure, a job. At hearing the employee testified he was employed by the new corporation, he knew the former employer went out of business, and he accepted new employment.

In contrast, Indag was incorporated as a wholly owned subsidiary for the purpose of disguising Iowa Industrial's activities that competed with some of its customers. The person who was president of both Iowa Industrial and Indag testified "Indag Iowa had no real assets of its own" and described it to Janda as a "paper corporation." Janda reported to the same person both before and after Indag's incorporation. Although during part of his employment Janda was paid with an Indag check, Indag was simply a conduit for funds furnished by Iowa Industrial. Janda remained insured under Iowa Industrial's group health plan. He received certificates from Iowa Industrial's profit sharing trust and its stock ownership plan and trust, which ultimately were liquidated for $90. He was required to office at the Iowa Industrial plant. All of Janda's credit cards required for his business travel were issued through Iowa Industrial. Real estate and auto leases for the new venture were with Iowa Industrial "because Indag had no credit or assets."

Somewhat ambiguously, trial court concluded "that there was an employment contract between the plaintiff and the defendants, that the contract was with Iowa Industrial Hydraulics ...." There was substantial evidence to support trial court's conclusion there was an employment contract between Iowa Industrial and Janda. Assuming Indag was a viable corporation, we find no substantial evidence there was an employer-employee relationship between Indag and Janda. Most of the factors that might create such a relationship were absent. *See Prokop v. Frank's Plas-*

*tering Co.,* 257 Iowa 766, 775, 133 N.W.2d 878, 883 (1965). The evidence falls short of supporting a finding that the parties considered Janda's employment with Iowa Industrial terminated by a new contract with Indag.

We affirm that part of the judgment holding Iowa Industrial liable and reverse that part finding Indag liable.

### III. *Date From Which Judgment Interest Accrues.*

The judgment appealed from was modified to provide for interest at ten percent from the date the petition was filed, pursuant to Iowa Code section 535.3 (1981). Iowa Industrial and Indag assert the prior statute in force when Janda's action was filed, providing for only seven percent interest and containing no language of retrospection, should apply.

The amendment in question was adopted March 28, 1980. 1980 Iowa Acts ch. 1170, § 2. The text of House File 673, which effected the amendment, stated:

Section 1. Section five hundred thirty-five point three (535.3), Code 1979, is amended to read as follows:

535.3 INTEREST ON JUDGMENTS AND DECREES. Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered, in which case the judgment or decree shall draw interest at the rate expressed in the contract, not exceeding the maximum applicable rate permitted by the provisions of section 535.2, which rate must be expressed in the judgment or decree. The interest shall accrue from the date of the commencement of the action.

Sec. 2. This Act is effective January 1, 1981 and shall not apply to judgments rendered or decrees entered of record prior to that date.

The "explanation" to this legislation stated:

This bill increases the amount of interest on money due on judgments and decrees

of courts, where a different rate is not filed by contract, from seven to ten percent. The bill will not apply to judgments rendered and decrees entered of record prior to its effective date.

■ It is plain from the amendment and the explanation that the legislature intended to provide interest at a new rate, computed from the date the petition was filed, to attach to judgments entered of record on and after, but not prior to, January 1, 1981. The legislature surely knew that a judgment entered January 1 or January 2, 1981, would be foundationed on a petition filed before January 1, 1981. Thus when it mandated that interest should be computed back to the "commencement of the action" it purposefully permitted interest to be based on a period antedating the effective date of the act. Assuming this was, as Iowa Industrial contends, a retrospective application of the statute, we must determine whether trial court was right, as a matter of law, in holding it was a permissible application.

It is true, of course, that generally a statute will be given prospective application only, unless it appears the legislature clearly intended it to be applied retrospectively. Iowa Code § 4.5 (1981); see State ex rel. Leas in Interest of O'Neal, 303 N.W.2d 414, 419 (Iowa 1981). "An exception exists, however: when a statute relates solely to a remedy or procedure, it is ordinarily applied both prospectively and retrospectively." Id. Here the interest rate increase and the period over which interest is computed, provided by the Iowa Code section 535.3 amendment, relate to a remedy. These were remedial provisions, not substantive. See Oresman v. G.D. Searle & Co., 388 F.Supp. 1175, 1179 (D.R.I.1975) (interest on a judgment for damages is not of the substance of the action but exclusively an incident attached thereto by legislative fiat after such right has been adjudicated); Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 561, 149 N.W.2d 789, 792 (1967) (measure of damages for a tortious wrong pertains to remedy rather than substantive law); Pepin v. Beaulieu, 102 N.H. 84, 89, 151 A.2d

230, 235 (1959) (statute allowing interest from date of commencement of action applied retrospectively as being remedial, not substantive); Foster v. Quigley, 94 R.I. 217, 218, 179 A.2d 494, 495 (1962) (retrospective application of statute providing for judgment interest "from the date of the writ" permissible as not of the substance of the cause of action).

Deciding the statute is remedially applied and therefore deserving of a presumption of retrospectiveness is not conclusive of the underlying question whether the statute is given retrospective application. State ex rel. Turner v. Limbrecht, 246 N.W.2d 330, 333 (Iowa 1976). We examine the language of the act, consider the manifest evil to be remedied, and determine whether there was an existing statute governing or limiting the mischief that the new act is intended to remedy. Manilla Community School District v. Halverson, 251 Iowa 496, 504–05, 101 N.W.2d 705, 710 (1960).

We already have analyzed the statutory language and found it to be retrospective in character. It also is evident there was a problem to be solved by this legislation. The market interest rates prevailing before this amendment were higher than the seven percent then provided. Thus appeals and delays in appeals were encouraged. The amendment was adopted March 28, 1980. Ordinarily it would have been effective July 1, 1980. Iowa Code § 3.7 (1981). The legislature, however, delayed the effective date of this legislation until January 1, 1981, thus permitting and encouraging an orderly disposition of cases pending March 28, 1980, before the new interest rate would affect them. This is further evidence the legislature intended the amended act to be applied retrospectively. See Pepin, 102 N.H. at 89, 151 A.2d at 235.

Finally, we turn to Iowa Industrial's contention the amended statute cannot apply to it because of subsections 2 and 4 of the Iowa Code section 4.13 (general savings provisions).

Iowa Code sections 4.13(2) and (4) provide:

The re-enactment, revision, *amendment,* or repeal *of a statute does not affect:*

. . . .

2. *Any* validation, cure, *right,* privilege, obligation, or liability *previously acquired,* accrued, accorded, or incurred thereunder;

. . . .

4. *Any* investigation, *proceeding,* or remedy *in respect of any* privilege, *obligation, liability,* penalty, forfeiture, or punishment; *and the* investigation, *proceeding,* or remedy *may be* instituted, *continued,* or enforced, and the penalty, forfeiture, or punishment imposed, *as if the statute had not been* repealed or *amended.*

(Emphasis added.) Iowa Industrial appears to assert its obligation for interest "accrued" under the former Iowa Code section 535.3 (seven percent from date of judgment) and the section 4.13(2) savings provision insulates it from the effect of the amendment.

■ It is true these provisions may save accrued rights and commenced proceedings. *In re Estate of Hoover,* 251 N.W.2d 529, 531 (Iowa 1977). But under former Iowa Code section 535.3 defendants incurred no obligation for interest, and plaintiff acquired no right to interest, until judgment was rendered. Thus, no obligation for, or rights to, interest attached under the old statute in these circumstances, and the savings clause has no effect here because judgment was not entered until July 10, 1981.

Nor does Iowa Code section 4.13(4), quoted above, "save" Iowa Industrial from the operation of amended section 535.3. There was no "obligation" or "liability" of Iowa Industrial to pay judgment interest existing at the effective date of the amended statute. Judgment had not been entered. Iowa Industrial had no vested right to pay interest at seven percent from the date of judgment only. *See generally Eldridge City Utilities v. Iowa State Commerce Commission,* 303 N.W.2d 167, 171 (Iowa 1981).

We affirm trial court's judgment insofar as it provided for ten percent interest from the date the petition in this cause was filed.

We affirm in part, reverse in part, and remand for judgment in conformance with this opinion. Costs are taxed one-half to Janda and one-half to Iowa Industrial.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.