# IN THE SUPREME COURT OF IOWA

No. 40 / 07–1096

Filed July 24, 2009

ANDERSON FINANCIAL SERVICES, LLC
d/b/a **LOAN MAX** and **LOAN SMART,**

     Appellant,

vs.

**THOMAS J. MILLER,** Attorney General
of the State of Iowa in His Official Capacity,

     Appellee.

---

Appeal from the Iowa District Court for Polk County, Artis Reis, Judge.

Car title lender appeals declaratory ruling that advances made under open lines of credit after July 1, 2007, under pre-July 1, 2007 loan agreements, were subject to more restrictive interest rates specified in statute taking effect on July 1, 2007. **REVERSED AND REMANDED.**

Mark McCormick, Mark E. Weinhardt, and Edward M. Mansfield of Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, William L. Brauch, Special Assistant Attorney General, and Jessica J. Whitney, Assistant Attorney General, for appellee.

**TERNUS**, **Chief Justice**.

This case presents the question whether legislation that went into effect on July 1, 2007, capping finance charges on car title loans applies to post-July 1, 2007 advances made under pre-July 1, 2007 agreements that provided for higher interest rates on such advances. The district court held the new statute, Iowa Code section 537.2403(1) (Supp. 2007), prohibited the appellant, Anderson Financial Services, LLC, from charging a contracted interest rate that exceeded the rate allowed under the new law on advances made after July 1, 2007, on pre-July 1, 2007 loan agreements. Anderson Financial's appeal brings this issue to us.

Upon our review of the record and the governing legal authorities, we conclude the new statute applies prospectively only and does not affect contractual rights under loan agreements executed prior to July 1, 2007. Accordingly, we reverse the district court's judgment and remand for entry of a declaratory judgment in favor of Anderson Financial.

## I. Background Facts and Proceedings.

On July 1, 2007, legislation regulating the permissible interest rate on car title loans went into effect. *See* 2007 Iowa Acts. ch. 26, §§ 2–3; Iowa Const. art. III, § 26 (providing legislation with no express effective date becomes effective on July 1 of the year of enactment). This legislation amended Iowa Code section 537.2402(1) (2007), which permits the extension of credit without limitation as to the amount or rate of any finance charge. 2007 Iowa Acts ch. 26, § 2. Under the amendment, open-ended credit secured by title to personal or family motor vehicles is excluded from section 537.2402(1). *Id.* (codified at Iowa Code § 537.2402(1)). The 2007 legislation also added a new section to chapter 537, section 537.2403, which provides in pertinent part:

> A lender shall not contract for or receive a finance charge exceeding twenty-one percent per year on the unpaid balance of the amount financed for a loan of money secured by a certificate of title to a motor vehicle used for personal, family, or household purpose except as authorized under chapter 536 or 536A.

*Id.* § 3 (codified at Iowa Code § 537.2403(1)). Thus, the effect of the new legislation was to impose limits on the finance charges for car title loans where none had previously existed.

Anderson Financial does business as Loan Max and Loan Smart, providing small–dollar loans to Iowans that are secured by liens against the borrowers' motor vehicles.[1] Such loans are known as "car title loans." These loan agreements provide an open line of credit with an annual interest rate typically between 264% and 300%. A borrower may repay his loan as promptly or slowly as desired, subject to monthly payment of a minimum amount and a finance charge assessed against the outstanding balance. The loan agreement allows the borrower to "take cash advances . . . from time to time, up to the credit limit established [by the lender], provided that no portion of any minimum monthly payment is past due at the time of the advance." The borrower's credit limit is determined at the initial credit screening based on his ability to repay and the value of his motor vehicle. Loan Max reserves the right to raise or lower a borrower's personal credit limit based on any changes in the borrower's income or the value of his collateral. The borrower has no obligation to take advances after the first loan is made. Correspondingly, Loan Max "may suspend making future cash advances . . . at any time and in [its] sole discretion if [it] in good faith believe[s] that [it] is in jeopardy of not being repaid as agreed . . . ."

---

[1]We will refer to Loan Max and Loan Smart collectively as "Loan Max" throughout the remainder of this opinion.

After the new legislation was enacted, but before its effective date, Anderson Financial requested an opinion from the appellee, Iowa Attorney General Thomas J. Miller, as to whether the new cap on finance charges prohibited Loan Max from charging its contracted interest rates on car title loans entered into before July 1, 2007. Anderson Financial believed two existing Iowa statutes would prohibit such a result: (1) Iowa Code section 535.2(3)(*b*), which permits the continuation of interest rates lawful at the time of contracting, including their application to future advances; and (2) Iowa Code section 4.13(2), which states that the amendment of a statute does not affect the validity of any right previously acquired under the statute. The Attorney General responded that new section 537.2403(1) would not apply to finance charges accruing on or after July 1, 2007, on advances that had been made before that date under pre-July 1, 2007 loan agreements. Rejecting Anderson Financial's reliance on section 535.2(3)(*b*) and section 4.13(2), the Attorney General also opined that any advances made on pre-July 1, 2007 car title accounts on or after July 1, 2007, would be subject to the finance-charge limits of the new law.

Anderson Financial immediately sought a declaratory judgment in district court that Iowa Code section 537.2403(1) did not prohibit Loan Max from charging the contract interest rate on any past or future advances made under pre-July 1, 2007 loan agreements. After hearing, the district court entered a declaratory ruling adopting the conclusions of the Attorney General. Anderson Financial appealed.[2]

---

[2]Because we resolve this dispute on statutory interpretation grounds, we do not address whether section 535.2(3)(*b*) or section 4.13(2) would preclude application of the statute to pre-July 1, 2007 contracts.

## II. Standard of Review.

This case presents an issue of statutory construction. We review district court rulings on such issues for the correction of errors of law. *Iowa Dep't of Transp. v. Soward,* 650 N.W.2d 569, 571 (Iowa 2002).

The polestar of statutory interpretation is to give effect to the intention of the legislature. *Bahl v. City of Ashbury,* 725 N.W.2d 317, 321 (Iowa 2006). We determine that intent from the language of the statute. *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.,* 739 N.W.2d 303, 309 (Iowa 2007).

## III. Discussion.

Anderson Financial contends section 537.2403(1) operates prospectively only and, therefore, applies only to loan agreements entered into after July 1, 2007. In considering this contention, we will apply the following principles of law:

> It is well established that a statute is presumed to be prospective only unless expressly made retrospective. Statutes which specifically affect substantive rights are construed to operate prospectively unless legislative intent to the contrary clearly appears from the express language or by necessary and unavoidable implication. Conversely, if the statute relates solely to a remedy or procedure, it is ordinarily applied both prospectively and retrospectively.
>
> . . . Substantive law creates, defines and regulates rights. Procedural law, on the other hand, "is the practice, method, procedure, or legal machinery by which the substantive law is enforced or made effective." Finally, a remedial statute is one that intends to afford a private remedy to a person injured by a wrongful act. It is generally designed to correct an existing law or redress an existing grievance.

*Baldwin v. City of Waterloo,* 372 N.W.2d 486, 491 (Iowa 1985) (quoting *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 332 (Iowa 1976)) (citations omitted); *accord Iowa Beta Chapter of Phi Delta Theta Fraternity v. State,* 763 N.W.2d 250, 266 (Iowa 2009); Iowa Code § 4.5 (2009) ("A

statute is presumed to be prospective in its operation unless expressly made retrospective.").

We first examine the statute to determine if it was expressly made retrospective. A retrospective act operates "on transactions that have occurred or rights and obligations that existed before passage of the act."[3] 2 Norman J. Singer and J.D. Shambie Singer, *Sutherland Statutory Construction* § 41:1, at 383 (7th ed. 2009) [hereinafter "*Sutherland Statutory Construction*"]. The legislation in question did not expressly address the subject of retroactivity, nor did it state that the new interest-rate limitations applied to existing contracts. We conclude,

---

[3]Although the Attorney General does not expressly argue that application of the finance-charge cap to future advances is not a retroactive application of the statute, his arguments suggest as much. He contends that any future advances are unspecified and not guaranteed, pointing out that Loan Max could reduce a borrower's credit limit based on a decline in borrower income or the value of the collateral, and such action would cut off a borrower's right to future advances in excess of the reduced credit limit. Similarly, he asserts, Loan Max could terminate the contract if it believed in good faith it was in jeopardy of not being paid, thereby eliminating the borrower's right to any future advance. Nonetheless, we think pre-July 1, 2007 loan agreements created rights and obligations with respect to future advances that existed on July 1, 2007. As of that date, borrowers who had not defaulted on monthly payments had an existing right to additional advances up to their credit limit. If that right is exercised, Loan Max has a contractual obligation to extend the requested credit. Notably, Loan Max does not have a right under the contract to avoid this obligation should we hold the new law applies and the contractual interest rate is illegal if charged on future advances. *Cf. Hawkeye Commodity Promotions, Inc. v. Miller*, 432 F. Supp. 2d 822, 848–49 (N.D. Iowa 2006) (holding ban on monitor vending machines in retail establishments did not impair gaming operator's contracts with retailers because contracts included a provision that allowed gaming operator to terminate the contracts if the machines were banned by the legislature).

This court's decision in *IPALCO Employees Credit Union v. Culver*, 309 N.W.2d 484 (Iowa 1981), is on point. In that case, we held the newly enacted consumer credit code did not apply to loan agreements existing on the effective date of the statute. *IPALCO Employees Credit Union*, 309 N.W.2d at 486. Rejecting such an application as an inappropriate retrospective application of the statute, we noted that applying the new law to loan agreements executed prior to the effective date of the act would deprive the plaintiff lender of certain "rights it had when [the act] was adopted," including its right to attorney fees subsequently incurred in a post-enactment action to collect the debt. *Id.* We conclude the same reasoning applies here. The application of section 537.2304(1) to future advances is a retroactive application of the statute because the parties' rights and obligations existed prior to the effective date of the statute.

therefore, that the legislature has not expressly made section 537.2403(1) retroactive.

The next step in our analysis is to determine whether the statute affects substantive rights or relates merely to a remedy, as the Attorney General contends. *See Iowa Beta Chapter of Phi Delta Theta Fraternity*, 763 N.W.2d at 266. If the statute is substantive, we presume it operates prospectively only unless "by necessary and unavoidable implication," a legislative intent that it be applied retrospectively clearly appears. *Baldwin*, 372 N.W.2d at 491. If the statute is remedial, we presume a retrospective operation and employ a three-part test to determine if retroactive application is consistent with legislative intent. *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 370, 375 (Iowa 2000); *Janda v. Iowa Indus. Hydraulics, Inc.*, 326 N.W.2d 339, 344 (Iowa 1982) (same); *Appleby v. Farmers State Bank of Dows*, 244 Iowa 288, 294–95, 56 N.W.2d 917, 921 (1953) (same). "We examine the language of the act, consider the manifest evil to be remedied, and determine whether there was an existing statute governing or limiting the mischief which the new act is intended to remedy." *Janda*, 326 N.W.2d at 344; *accord Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 606 N.W.2d at 375; *Appleby*, 244 Iowa at 295, 56 N.W.2d at 921.

As noted, the Attorney General argues the statute is remedial; he asserts the legislature intended "to close the loophole in open-end credit lending and to remedy the defect in the law by putting usury protections back into place." While the *purpose* of the law may be characterized as an effort to "remedy" an unintended gap in the statutory prohibition of usurious interest rates, the statute is not remedial in the sense contemplated by the rule that remedial statutes are presumed to apply

retroactively.[4]    A remedial law " 'prescribes [a] method of enforcing . . . rights or obtaining redress for their invasion.' " *Schultz v. Gosselink*, 260 Iowa 115, 118, 148 N.W.2d 434, 436 (1967) (quoting *Black's Law Dictionary* 1598 (4th ed.)); *accord Sutherland Statutory Construction* § 41:9, at 483–84.    Remedial laws pertain to or affect a remedy as opposed to affecting or modifying a right.    *Schultz*, 260 Iowa at 118–19, 148 N.W.2d at 436.

Our decision in *Moose v. Rich*, 253 N.W.2d 565 (Iowa 1977), is enlightening.  In that case, this court considered whether an amendment to Iowa's workers' compensation statute immunizing coemployees unless the injured employee proved gross negligence should be given retrospective application.    *Moose*, 253 N.W.2d at 572.    Rejecting retroactive application, we held the statute "limit[ed] the right of an

---

[4]The Attorney General relies on the following statement from *Schmitt v. Jenkins Truck Lines, Inc.*, 260 Iowa 556, 149 N.W.2d 789 (1967):

> Black's Law Dictionary . . . says a remedial statute is:  "One that intends to afford a private remedy to a person injured by the wrongful act.  *That is designed to correct an existing law,* redress an existing grievance . . . .

> . . . .

> "A remedial statute is one which not only *remedies defects in the common law but defects in civil jurisprudence generally.*"

250 Iowa at 560, 149 N.W.2d at 791 (quoting *Black's Law Dictionary* 1457 (4th ed.) (emphasis added)).    Given the apparent breadth of this definition, we believe reliance on it would result in nearly any statute being classified as remedial.  It would not be an exaggeration to suggest that the legislature nearly always has in mind some problem that it seeks to address in a legislative enactment.  So, if a mere legislative purpose to remedy a perceived defect in the law made a statute remedial, very few statutes would not fall within this classification.  Therefore, we are convinced any correction made of defects in presently existing law must relate to remedial laws, i.e, laws that pertain to a means or method of addressing wrongs or obtaining relief.  *See, e.g.*, *Hiskey v. Maloney*, 580 N.W.2d 797, 799 (Iowa 1998) (holding legislature's characterization of statutory provision as "remedial" did not trigger presumption of retrospective application where statute created a new personal liability); *Young v. O'Keefe*, 248 Iowa 751, 752–53, 82 N.W.2d 111, 112–13 (1957) (holding amendment changing term "widow" to "spouse" in pension statute so as to include widowers, that was "for the obvious purpose of remedying the omission in the then existing statutes," should apply prospectively only).

employee to receive compensation from a co-employee" and was substantive, not remedial, "in that it [did] not provide for redress of wrongs, but rather made a policy decision to limit the redress that was available." *Id.*

Similarly, here, the new statute limiting the amount of interest that may be charged on certain loans does not afford a remedy or means of redress to a person injured by a wrongful act. It effects a substantive change in the level of allowable finance charges, prompted by the legislature's policy decision that limits on such charges were in the public interest. Regardless of the motivation for enacting the new law, the statute itself clearly "defines and regulates" lenders' right to impose finance charges and is, therefore, substantive. *Baldwin*, 372 N.W.2d at 491 ("Substantive law creates, defines and regulates rights.").

Because the statute is substantive, we presume it was intended to apply prospectively only unless a legislative intent that the statute have retrospective application appears "by necessary and unavoidable implication." *Id.*; *see also Manilla Cmty. Sch. Dist. v. Halverson*, 251 Iowa 496, 501, 101 N.W.2d 705, 708 (1960) (stating a retrospective operation is particularly disfavored when the statute affects substantive rights). The statute provides in relevant part: "A lender shall not *contract for or receive* a finance charge exceeding twenty-one percent . . . ." Iowa Code § 537.2403(1) (emphasis added). The language "contract for" does not unavoidably imply an intent to reach past transactions, but the reference to receiving a finance charge would seem to make the statute applicable to any interest collected after the effective date of the statute, regardless of the date of the underlying contract. Notwithstanding the possible implication of this language, the Attorney General acknowledged in the district court that the phrase "contract for or receive" is used throughout

the Iowa Consumer Credit Code and conceded the reference to *receiving* a finance charge is not enlightening as to whether the legislature intended retrospective application of this particular provision. In addition, Anderson Financial points out the "or receive" language simply "closed a gap that might exist if a lender were able to *collect* an otherwise impermissible finance charge so long as it had not *contracted for* such charge." Under these circumstances, we do not believe the reference to receiving a prohibited finance charge necessarily and unavoidably implies a legislative intent to apply this substantive statute retroactively.

The Attorney General argues the legislature intended a retrospective application with respect to future advances under pre-July 1, 2007 loan agreements because a solely prospective application allows Loan Max "to continue lending indefinitely on these open accounts . . . evad[ing] the law and the legislature's intent." A retrospective application is necessary, he claims, in order to remedy the evil of triple-digit interest sought to be eliminated by this legislation. The "magnitude and urgency of the problem" addressed by the legislation is not, however, a sufficient basis to construe the statute to apply retrospectively by necessary implication. *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 334 N.W.2d 290, 294 (Iowa 1983) (refusing to apply statute retrospectively even though legislature had expressly noted the magnitude and urgency of the problem sought to be addressed by the statute). Therefore, section 537.2403(1) applies prospectively only.

Because the cap on finance charges does not apply retrospectively, Loan Max may continue to charge the contractual interest rate on advances made under loan agreements pre-dating July 1, 2007. *See Benton County v. Wubbena,* 300 N.W.2d 168 (Iowa 1981). In *Benton County,* this court considered the retroactive application of a new statute

requiring persons committed to state institutions to pay for their care if financially capable of doing so. *Benton County*, 300 N.W.2d at 169. The trial court ordered the defendant to pay for care rendered prior to the enactment of the statute. *Id.* We reversed this ruling on appeal, holding there was nothing in the statute evidencing a legislative intent to apply the statute retroactively. *Id.* at 170. More importantly for purposes of the present case, we held the statute could not even be applied to recover sums incurred for care rendered *after* the effective date of the statute because the defendant's commitment preceded the enactment of the statute. *Id.*; *see also IPALCO Employees Credit Union v. Culver*, 309 N.W.2d 484, 486 (Iowa 1981) (refusing to apply newly enacted consumer credit code to loan agreements executed prior to the effective date of the act because to do so would deprive lender of rights it had when act was adopted). The same rationale applies here. Section 537.2403(1) applies prospectively only and does not affect loan agreements that predate its enactment.

## IV. Conclusion and Disposition.

We hold the statutory limitation on finance charges imposed by section 537.2403(1) applies prospectively only and does not prevent Loan Max from exercising its contractual right to collect the interest rates specified under agreements entered into prior to July 1, 2007, the date the statutory limitation became effective. The district court erred in ruling the statute applied to post-July 1, 2007 advances made pursuant to pre-July 1, 2007 agreements. We reverse the district court's judgment and remand for entry of a declaratory judgment consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Baker, J., who takes no part.