# IN THE SUPREME COURT OF IOWA

No. 22–0243

Submitted April 11, 2023—Filed June 9, 2023

**LARRY R. HEDLUND,**

Appellee,

vs.

**STATE OF IOWA, K. BRIAN LONDON,** Commissioner of the Iowa Department of Public Safety, Individually; **CHARLES M. PAULSON,** Director of Criminal Investigation, Individually; **GERARD F. MEYERS,** Assistant Director Division of Criminal Investigation, Individually,

Appellants.

---

Appeal from the Iowa District Court for Polk County, Paul D. Scott, Judge.

The State and named defendants appeal the district court's grant of the plaintiff's motion for summary judgment, which concluded that the 2019 amendment to Iowa Code section 70A.28(5)(*a*) applies retrospectively. **REVERSED AND REMANDED.**

McDermott, J., delivered the opinion of the court, in which all justices joined.

Brenna Bird, Attorney General, and Jeffrey C. Peterzalek (argued) and William R. Pearson, Assistant Attorneys General, for appellants.

Thomas J. Duff (argued) and Jim Duff of Duff Law Firm, P.L.C., West Des Moines, and Roxanne Barton Conlin of Roxanne Conlin & Associates, P.C., Des Moines, for appellee.

**McDERMOTT, Justice.**

Larry Hedlund filed a lawsuit in 2013 against the State and several state officials (collectively, the "State") asserting a claim for wrongful discharge under Iowa's whistleblower-protection law, Iowa Code section 70A.28 (2013). In 2019, while Hedlund's lawsuit was still pending, the legislature amended section 70A.28 to allow an aggrieved employee to pursue damages beyond those that the prior version of the statute allowed. 2019 Iowa Acts ch. 109, § 1 (codified at Iowa Code § 70A.28(5)(*a*) (2020)). Hedlund filed a motion arguing that the new amendments should apply retrospectively to his claim. The district court ruled in his favor. The State filed an application for interlocutory appeal challenging that ruling, which we granted.

This case is no stranger to our court. In 2016, we decided an appeal challenging the district court's dismissal of Hedlund's wrongful-discharge-in-violation-of-public-policy claim and a related motion to amend the district court's ruling, ultimately dismissing the appeal as untimely. *Hedlund v. State* (*Hedlund I*), 875 N.W.2d 720, 722–24, 727 (Iowa 2016). In 2019, we decided an appeal challenging the dismissal of Hedlund's section 70A.28 claim and two other claims. *Hedlund v. State* (*Hedlund II*), 930 N.W.2d 707 (Iowa 2019). We reversed the dismissal of his section 70A.28 claim but held that he wasn't entitled to a jury trial because the statute provided only equitable relief. *Id.* at 718. In both appeals, we detailed Hedlund's allegations and the earlier procedural history of this case, and we will forego restating them in full here. *Hedlund II*, 930 N.W.2d at 712–15; *Hedlund I*, 875 N.W.2d at 722–24. This appeal, as the parties observe,

presents a question of statutory interpretation about the temporal application of the chapter 70A amendments. We pick up the relevant procedural history where *Hedlund II* left off.

Three days after we filed our opinion in *Hedlund II,* an amendment to section 70A.28(5)(*a*) went into effect. 2019 Iowa Acts ch. 109, § 1 (codified at Iowa Code § 70A.28(5)(*a*) (2020)). Language added by that amendment to the existing statute is shown here in italics:

> A person who violates subsection 2 [(wrongfully discharging or retaliating against an employee)] is liable to an aggrieved employee for affirmative relief including reinstatement, with or without back pay, *civil damages in an amount not to exceed three times the annual wages and benefits received by the aggrieved employee prior to the violation of subsection 2, and* any other equitable relief the court deems appropriate, including attorney fees and costs.

Iowa Code § 70A.28(5)(*a*) (2020). *Compare id.* § 70A.28(5)(*a*) (2020), *with id.* § 70A.28(5)(*a*) (2019).

Hedlund filed a motion asking the district court to declare that the statutory amendments applied retrospectively to his claim and entitled him to pursue the additional damages. He further argued that because the new damages authorized under the statute compensate aggrieved plaintiffs for their losses, they constitute legal relief entitling him to a jury trial. The district court, as mentioned, granted Hedlund's motion, and this interlocutory appeal from the State followed. The State makes three arguments on appeal: that the district court erred in applying the amendments retrospectively; that the "law of the case" (our decision in *Hedlund II*) forecloses a jury trial and compensatory damages; and that Hedlund waived his right to a jury trial because, after the case had been

remanded, the parties agreed during a trial scheduling conference to set the case for a ten-day nonjury trial and the district court entered a trial scheduling order accordingly.

We begin with the State's challenge to retrospective application of the amendments. The district court used a multifactor test described in some of our prior cases for determining whether a statute applies retrospectively. The first step in this analysis considers "whether the legislature expressly stated its intent that a statute should apply retrospectively." *Dindinger v. Allsteel, Inc.*, 860 N.W.2d 557, 563 (Iowa 2015). The second step assesses "whether the statute affects substantive rights or relates merely to a remedy." *Anderson Fin. Servs., LLC v. Miller*, 769 N.W.2d 575, 579 (Iowa 2009). If it relates to a remedy, the statute is presumed to apply *retrospectively*, and the court then embarks on "a three-part test to determine if retroactive application is consistent with legislative intent." *Id.* In this subtest seeking to ascertain legislative intent, the court is to (1) "examine the language of the act," (2) "consider the manifest evil to be remedied," and (3) "determine whether there was an existing statute governing or limiting the mischief that the new act is intended to remedy." *Janda v. Iowa Indus. Hydraulics, Inc.*, 326 N.W.2d 339, 344 (Iowa 1982).

On the first step, the district court determined that the statute did not expressly provide for retrospective application of the amendments. On the second step, the district court looked to our definition of a "remedial" statute as one that "provides an additional remedy to an already existing remedy or provides a

remedy for an already existing loss." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 267 (Iowa 2009). The district court determined that the heightened damages added by the amendments met this definition, and thus, the statute must be presumed retrospective. Turning then to the three-part test to divine legislative intent, the district court chiefly relied on two newspaper articles in which two legislators mentioned pending matters raising whistleblower-protection claims, and a floor statement by a legislator sponsoring the bill with the amendments, as evidence that the legislature intended retrospective application.

We break with the district court's analysis on the second part of the test—whether the amendments are substantive or remedial. Even if a statute might fit a broad conception of "remedial" as we've defined that term, a statute that imposes a meaningful change in the parties' positions after the conduct at issue is nonetheless "substantive" and requires prospective treatment. In *Hiskey v. Maloney*, for instance, we declined to retrospectively apply a statute that allowed county treasurers to seek as an additional remedy a personal judgment for the payment of delinquent real estate taxes, even though a remedy permitting judgments against the person's property already existed. 580 N.W.2d 797, 799 (Iowa 1998). Similarly, in *Davis v. Jones*, we declined to retrospectively apply a statute that made former Iowa residents subject to the court's jurisdiction by personal service of a lawsuit, even though they would have been subject to the court's jurisdiction if personally served in the same manner while they lived in Iowa. 78 N.W.2d 6, 7–10 (Iowa 1956). Summarizing both cases in *Dindinger v. Allsteel,*

*Inc.*, we noted that "[n]either of those statutes altered the scope of what was and was not permissible conduct under Iowa law," but still "we considered both to be substantive rather than remedial or procedural changes." 860 N.W.2d at 563, 565 (declining to retrospectively apply amendments to the Iowa Civil Rights Act that imposed liability for wage discrimination and enhanced existing remedies).

The United States Supreme Court has interpreted amendments to the Federal Civil Rights Act similarly. *See Landgraf v. USI Film Prods.*, 114 S. Ct. 1483 (1994). In *Landgraf v. USI Film Products*, the Court analyzed whether enhanced remedies provided to plaintiffs in civil rights cases applied retrospectively. *Id.* at 1489. Before the amendments, the Act afforded only equitable remedies, with backpay as the primary form of relief available. *Id.* at 1490. The amendments allowed the addition of compensatory damages and a trial by jury. *Id.*

Although the amendments in *Landgraf* provided an additional remedy to an already-existing remedy, the Supreme Court refused to retrospectively apply them. *Id.* at 1508. To do so, the Court said, would have meant applying "statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Id.* at 1504. The Court explained that "[u]nlike certain other forms of relief, compensatory damages are quintessentially backward looking" and are thus "the type of legal change that would have an impact on private parties' planning." *Id.* at 1506.

Considering the similarities between the statutory amendments in this case and in *Landgraf*, we find the *Landgraf* Court's reasoning instructive. In both cases, statutory amendments added compensatory damages to the equitable

remedies that were already in place. *See id.* at 1490–91. In both cases, applying the statute to past conduct would expose the defendants to increased liability with far harsher penalties than were available when the alleged misconduct took place. *Id.* at 1506–07.

In this case, before the amendments, a defendant sued under section 70A.28 could be held liable for reinstatement, backpay, and fees. *See* Iowa Code § 70A.28(5)(*a*) (2019). After the amendments, the employer could, in addition, be required to pay up to *three times* the employee's *annual* wages and benefits. *See* Iowa Code § 70A.28(5)(*a*) (2020). This change conceivably turns, in some instances, an employer's liability for damages from one in the low five-figures to one well into the six-figures after. This is, in our view, "the type of legal change that would have an impact on private parties' planning." *Landgraf*, 114 S. Ct. at 1506.

"The *extent* of a party's liability, in the civil context as well as the criminal, is an important legal consequence that cannot be ignored." *Id.* at 1507. A change to a remedy can, without question, bring about a substantive change that requires a prospective, not retrospective, application. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 1497. What's more, retrospective application of the amendments' heightened remedies would not serve the purpose of motivating defendants to take preventive action *before* the alleged misconduct occurs. *See id.* at 1506 n.35. Because retrospectively applying the amendments to section

70A.28(5)(*a*) would substantively alter the State's potential liability for preenactment conduct, the amendments should not apply retrospectively. The district court thus erred in its ruling to the contrary.

This doesn't end our analysis. Both parties in their appellate briefs cite to another case, *Hrbek v. State*, in which we used a different analytical test to determine whether a statute should have retrospective application. 958 N.W.2d 779, 782 (Iowa 2021). Both parties present arguments (to different extents) that would apply our revised analytical test in *Hrbek* to the amendments in this case. In *Nahas v. Polk County*, a case also filed today, we applied this revised test for retrospective application. ___ N.W.2d ___ (Iowa 2023).

Under our revised test, the court first must determine whether the statute's application "is in fact retrospective." *Id.* at ___ (quoting *Hrbek*, 958 N.W.2d at 782). If the application is indeed retrospective, then the court next must determine whether the statute should be applied retrospectively. *Id.* at ___. For this determination, we engage in statutory interpretation to determine whether the legislature "expressly made [the statute] retrospective." Iowa Code § 4.5. If so, then the court determines whether any substantive law bars the statute's retrospective application. *Nahas*, ___ N.W.2d at ___. Most of the difficult judgments will come in analyzing the first question, and less so the second or third. *See Landgraf*, 114 S. Ct. at 1498 (cautioning that "deciding when a statute operates 'retroactively' is not always a simple or mechanical task"); Antonin Scalia &

Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 262 (2012) [hereinafter Scalia & Garner, *Reading Law*] ("The difficult question is: What does retroactivity consist of?").

Applying the revised test to this case, we begin by determining whether the amendments' application is in fact retrospective. *Hrbek*, 958 N.W.2d at 782. An application is retrospective "when a statute applies a new rule, standard, or consequence to a *prior* act or omission." *Id.* We focus on the timing of "the specific conduct regulated or addressed in the statute." *Nahas*, ___ N.W.2d at ___. We must determine, in other words, whether the act or event that the statute is meant to regulate is in the past or future. If the future, then it's prospective; if the past, then it's retrospective. Prospective uses are generally permitted since they don't upend a party's settled expectations or prevent a party from conforming its conduct to avoid future liability. Retrospective uses, on the other hand, require further analysis.

In *Hrbek*, we analyzed whether a new statute that barred represented defendants in postconviction-relief cases from filing pro se documents operated retrospectively. 958 N.W.2d at 781–82. The defendant argued that, because he'd filed his application for postconviction relief long before the new statute went into effect, rejecting his pro se brief would constitute a retrospective application of the new statute. *Id.* at 782–83. We determined that the act that the statute meant to regulate was the filing of the pro se brief itself, not the application for postconviction relief. *Id.* at 783. Because he filed his pro se brief *after* the statute's enactment, we held that the statute operated prospectively. *Id.* at 783–84.

In *Nahas*, we analyzed whether either of two different subsections of Iowa Code section 670.4A operated retrospectively. ___ N.W.2d at ___. Subsection (1)(*a*) of the statute established qualified immunity for municipalities. *Id.* at ___. We determined that the activity that this subsection meant to regulate was the unlawful conduct alleged in the petition. *Id.* at ___. Because that conduct occurred before the statute's enactment, we declined to retrospectively apply subsection (1)(*a*). *Id.* at ___. Subsection (3) of the statute, on the other hand, imposed several heightened pleading standards for petitions that allege a violation of the Iowa Municipal Tort Claims Act. *Id.* at ___. Because the plaintiff filed his petition and two later amendments after the statute's enactment, we held that two of the statute's heightened pleading requirements—to "state with particularity the circumstances constituting the violation" and to plead "a plausible violation" of the law—applied prospectively to those pleadings. *Id.* at ___ (quoting Iowa Code § 670.4A (2021)).

Hedlund argues that applying a heightened remedy operates prospectively, not retrospectively, because it regulates an event in the *future*—the jury's verdict at the forthcoming trial. But this misidentifies the activity that the statute is meant to *regulate*. *See Hrbek*, 958 N.W.2d at 782 ("The prior act or omission is the event of legal consequence 'that the rule regulates.'" (quoting *Landgraf*, 114 S. Ct. at 1524 (Scalia, J., concurring in the judgment))). The specific conduct regulated in section 70A.28(5)(*a*) is the wrongful discharge or retaliation described in subsection (2). *See* Iowa Code § 70A.28(5)(*a*). The damages available

in subsection (5)(*a*) simply describe the potential consequences for that misconduct. *See id.* The amendments apply a new consequence—damages up to three times an employee's annual wages and benefits—to a *prior* act of wrongful termination or retaliation. *See id.* As a result, the activity that the statute regulates doesn't take place in the future but in the past, making its application retrospective.

Turning then to the second step of this test, we must determine whether the statute *should* be applied retrospectively. *Nahas*, ___ N.W.2d at ___. We ordinarily presume that statutes operate only prospectively. *Dindinger*, 860 N.W.2d at 563. "As a general, almost invariable rule, a legislature makes law for the future, not for the past." Scalia & Garner, *Reading Law* at 261. The legislature has, by statute, built this presumption into every law that it enacts; Iowa Code section 4.5 states: "A statute is presumed to be prospective in its operation unless expressly made retrospective."

The legislature included no express language in the statute to give it retrospective application. We thus need not move to the third step (whether any substantive law bars the statute's retrospective application) under our revised test. Because Hedlund seeks to apply the amendments retrospectively, and because the legislature made no express provision for retrospective application, the amendments to chapter 70A.28 do not apply in this case. Under our revised test, too, the district court's judgment must be reversed.

We prefer the revised test to our prior approach. Among other features, it upholds the statutory presumption that statutes will not be applied retrospectively unless the legislature expressly provides for retrospective application. *See* Iowa Code § 4.5. As the Supreme Court put the point in *Landgraf*:

> Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits. Such a requirement allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate.

114 S. Ct. at 1501 (majority opinion). Our revised approach also generally follows the reasoning of *Landgraf*, the Supreme Court's most recent case on retrospective application of statutes, and thus is the approach now followed by federal courts. *See, e.g., Elbert v. True Value Co.*, 550 F.3d 690, 692–93 (8th Cir. 2008) (applying *Landgraf* to deny the retrospective application of amendments to a statute that enlarged the universe of potential plaintiffs and enhanced damages).

Finally, we believe the revised approach is consistent with the *results* in our prior cases, including those that engaged in a separate analysis for remedial or procedural statutes. For example, in *State v. Fordyce*, consistent with the second step of our revised approach, we declined to apply new "stand your ground" legislation to the defendant's case, explaining, "it was the legislature's prerogative not to make that [amendment] effective" retroactively. 940 N.W.2d 419, 424, 427 (Iowa 2020) (quoting *State v. Williams*, 929 N.W.2d 621, 637 (Iowa 2019)). In *State v. Macke*, consistent with the second step of our revised approach, we held that legislation limiting appeals did not apply to appeals that were already

pending on the law's effective date given the absence of "retroactivity language" in the legislation. 933 N.W.2d 226, 235 (Iowa 2019). In *Dindinger*, consistent with the second step of our revised approach, we considered Iowa Code section 4.5 and held that a law that "altered the scope of what was and was not permissible conduct under Iowa law" did not apply to conduct that predated the effective date of the law. 860 N.W.2d at 565–66. In *Anderson Financial Services, LLC v. Miller*, consistent with the second step of our approach, we held that a cap on finance charges, with no express language regarding retroactivity, did not apply to loans that originated before the law became effective. 769 N.W.2d at 580–81. In *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, consistent with the second step of our revised approach, we declined to apply a law eliminating personal liability for torts committed by state employees because the legislature had not specified retrospective application and "[a]t the time of the commission of the tort, [the state employee] could be held personally liable for his acts." 763 N.W.2d at 267. In *City of Waterloo v. Bainbridge,* consistent with the second step of our approach, we held that a law enabling a city to obtain title to abandoned buildings applied to a building that had been abandoned before the law's effective date but had remained abandoned thereafter, because the statute was aimed at "[t]he unsafe condition created by abandoned buildings, regardless of when they became abandoned." 749 N.W.2d 245, 247–48, 251 (Iowa 2008). In *Iowa Comprehensive Petroleum Underground Storage Tank Fund Board v. Shell Oil Co.*, consistent with the second step of our revised approach, we applied environmental legislation "designed to address past and future petroleum leaks" to past releases

of petroleum as well as future ones. 606 N.W.2d 370, 375–76 (Iowa 2000). In *Thorp v. Casey's General Stores, Inc.*, consistent with the third step of our revised approach, we refused to apply a statutory amendment retrospectively because it would deprive the plaintiff of a vested cause of action without due process. 446 N.W.2d 457, 463 (Iowa 1989). And in *Janda v. Iowa Industrial Hydraulics, Inc.*, consistent with the first step of our approach, we held that interest on judgments entered after a new interest-rate-setting statute went into effect should be calculated from the petition's date of filing, even if that date was before the statute's effective date, despite language that the statute didn't apply to judgments entered before the effective date. 326 N.W.2d at 343–45. *But see State ex rel. Turner v. Limbrecht*, 246 N.W.2d 330, 333–34 (Iowa 1976) (finding in the preamble of a consumer fraud statute a legislative intent that it apply retrospectively). In short, we believe the revised approach generally offers a more coherent explanation for the results in these cases. (Of course, nothing we say in this case is meant to affect cases governed by Iowa Code section 4.13(2), which states that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment, revision, or amendment of a statute, the penalty, forfeiture, or punishment if not already imposed shall be imposed according to the statute as amended.")

Because we find in the State's favor that section 70A.28(5)(*a*) cannot apply retrospectively to Hedlund's claims, we need not address the State's law-of-the-case and waiver arguments. We reverse the district court's grant of Hedlund's motion seeking retrospective application of the amendments to chapter 70A.28 and remand for further proceedings.

**REVERSED AND REMANDED.**