# IN THE COURT OF APPEALS OF IOWA

No. 22-1184
Filed November 8, 2023

**CALABRETTO BUILDING GROUP,**
    Plaintiff-Appellant,

**vs.**

**TRADESMEN INTERNATIONAL, LLC.,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Heather L. Lauber, Judge.

A builder appeals the grant of summary judgment to the staffing company that supplied an allegedly negligent forklift operator under a client services agreement. **AFFIRMED**.

Matthew D. Hammes of Locher Pavelka Dostal Braddy & Hammes, LLC, Omaha, Nebraska, for appellant.

Lynn C. Herndon and Mark D. Aljets of Nyemaster Goode, P.C., Des Moines, for appellee.

Heard by Tabor, P.J., Greer, Schumacher, Badding, Buller, and Langholz, JJ, and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**TABOR, Presiding Judge.**

Under their contract, Tradesmen International supplied Calabretto Building Group with a forklift operator to help with the construction of a storage facility. That operator ran into a precast beam, knocking the beam from its support column, damaging the concrete floor and the forklift. Calabretto sued Tradesmen under a theory of respondeat superior.[1] Tradesmen denied liability, pointing to the terms of its contract with Calabretto. Calabretto argued those terms were void under Iowa Code section 537A.5 (2020). Both moved for summary judgment. The district court granted Tradesmen's motion. Calabretto appeals.

Because we find that Tradesmen could enforce the contract, and it barred Calabretto's tort claim, we affirm the grant of summary judgment.

## I. Facts and Prior Proceedings

In 2008, Jesse Calabretto, the owner of Calabretto Building Group, signed a "client services agreement" with Tradesmen, a staffing company. In that contract, Tradesmen agreed to assign employees to Calabretto "on a permanent basis and assume exclusive responsibility for the payment of wages to its employees so assigned." Tradesmen also guaranteed that workers sent to Calabretto's job site would be "of the quality and have the knowledge" that Calabretto requested. If in Calabretto's opinion that was not the case, it could return the worker to Tradesmen within the first four hours of the first day at no

---

[1] Translated from Latin, respondeat superior means "let the principal answer." *Montanick v. McMillin*, 280 N.W. 608, 613 (Iowa 1938). Under that doctrine, employers are liable for their employees' negligence if those employees are acting within the scope of employment. *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999).

charge. Calabretto was "solely responsible for directing, supervising, and controlling Tradesmen employees" and Tradesmen did "not warrant or insure the work."

Key to this appeal, the agreement contained this "hold harmless" clause:

> INSURANCE AND HOLD HARMLESS CLAUSE: The Client agrees to provide general liability insurance coverage for Tradesmen and its workers provided under this contract with a liability limit of not less than $1,000,000 per occurrence and a Certificate of Insurance naming Tradesmen as a Certificate Holder.
> a. Client agrees that Tradesmen is neither a guarantor, nor insurer and will not be liable for any injury, loss or damage to persons or property or from work stoppages that may arise in the performance or non-performance of work by Tradesmen employees, or the conduct of any other person at the job site. Client agrees to release, defend, indemnify and hold Tradesmen harmless from and against any and all claims, losses, liabilities and costs (including reasonable attorneys' fees) relating to any injury, loss or damage to persons or to property arising out of any and all wrongful or negligent acts committed by Client or Tradesmen employees under Client's supervision, direction and/or control. . . .

In 2019, Calabretto was building an Extra Space Storage facility in Ankeny. To complete this project, Calabretto needed a forklift operator. The builder turned to Tradesmen. Tradesmen assigned Marcus Johnson to work on the project in mid-October. On a muddy day in late November, Johnson drove the forklift into a precast beam, which fell, gouging a sizable hole in the concrete floor below and damaging the forklift. James Ekstrand—who traveled between construction sites as needed throughout the day as project superintendent—was not there when the accident happened. So Johnson called Ekstrand to report the mishap. Ekstrand later recounted that Johnson admitted that he "screwed up (he used a different term) and put a hole in my concrete."

The property damage totaled $61,653.92. Calabretto asked Tradesmen to foot the bill. Tradesmen declined, which brings us to this litigation. In August 2020, Calabretto sued Tradesmen, asserting the employer was responsible for Johnson's negligent operation of the forklift. Tradesmen answered, contending it had "complete immunity" under the parties' contract entered in 2008.

Calabretto moved for summary judgment in January 2022, asserting the immunity provision cited by Tradesmen was void and unenforceable under Iowa Code section 537A.5. In February 2022, Tradesmen also moved for summary judgment, contending its contract with Calabretto barred any negligence claims against Tradesman based on the performance of its employees.[2] In resisting that motion, Calabretto offered an affidavit from owner Jesse Calabretto asserting that the 2008 client services agreement had been "terminated in writing" and was not in effect at the time of the 2019 incident. That assertion was controverted. Tradesmen offered the affidavit of its account executive, Wesley McDonald, who swore that neither party had terminated the contract and it was in effect in November 2019.

In June 2022, the district court granted summary judgment for Tradesmen. The court ruled the agreement between the parties was not a construction contract as defined in section 537A.5(1); because no issue of indemnification appeared, the contractual provision was not void under section 537A.5(2); and, regardless, the economic loss doctrine defeated Calabretto's tort claim. The court also found that Calabretto's affidavit violated Iowa Rule of Civil Procedure 1.981(5) and was

---

[2] As an alternative defense, Tradesmen argued that Calabretto could not recover in its tort action under the economic loss doctrine.

"self-serving, conclusory, and does not contain information that rises to the level of creating a genuine issue of material fact."

On appeal, Calabretto contends the district court committed five errors: (1) finding the agreement was not a construction contract; (2) finding the "hold harmless" provision was not void and unenforceable as contrary to public policy; (3) applying the economic loss doctrine to its tort claim; (4) disregarding its cross motion for summary judgment; and (5) finding no genuine issue of material fact as to whether Calabretto cancelled the contract before the incident.

Tradesmen defends the district court ruling on those five grounds; it also urges another basis for affirmance—that section 537A.5(2) does not apply retroactively to invalidate its contract with Calabretto—signed three years before the statute was enacted. As its bottom line, Tradesmen contends the terms of the client services agreement controls the relationship between the parties and entitles it to summary judgment.

## II. Scope and Standard of Review

We review the grant of summary judgment for correction of errors at law. *Breese v. City of Burlington*, 945 N.W.2d 12, 17 (Iowa 2020). Summary judgment is proper when the record contains no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019). We view the record in the light most favorable to the nonmoving party. *Banwart v. 50th St. Sports, L.L.C*, 910 N.W.2d 540, 545 (Iowa 2018). "When the facts are undisputed, we reverse only if the district court misapplied the law." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 149 (Iowa 2001). We likewise review the district court's statutory

interpretation for legal error. *Bank of the W. v. Kline,* 782 N.W.2d 453, 457 (Iowa 2010).

## III. Analysis

### A. Definition of Construction Contract

Calabretto first contends the district court erred in deciding that its client services agreement with Tradesmen was a labor contract rather than a construction contract as defined in section 537A.5(1).

Iowa Code section 537A.5(1) defines a construction contract as:

[A]n agreement relating to the construction, alteration, improvement, development, demolition, excavation, rehabilitation, maintenance, or repair of buildings, water or sewage treatment plants, power plants, or any other improvements to real property in this state, including shafts, wells, and structures, whether on ground, above ground, or underground, and includes agreements for architectural services, design services, engineering services, construction services, construction management services, development services, maintenance services, material purchases, equipment rental, and labor. "Construction contract" includes all public, private, foreign, or domestic agreements as described in this subsection other than such public agreements relating to highways, roads, and streets.

Calabretto emphasizes the breadth of this definition, pointing to the "relating to" language in the opening phrase and the inclusion of "labor" in the list of construction services covered. Calabretto contends the district court should have found its agreement with Tradesmen was both a labor contract and a construction contract. Tradesmen counters that the agreement "does not identify any construction project, building or improvement. Nor does [it] name a contractor, general contractor, subcontractor, or sponsor, or anything of the like." Tradesmen maintains that providing "temporary workers to its clients in the construction

industry does not automatically deem contracts it executes in Iowa 'construction contracts' under section 537A.5(1)."

We recognize persuasive points on both sides. But we choose to bypass this definitional dilemma and resolve the parties' dispute on other grounds. Assuming without deciding that the client services agreement was a construction contract under section 537A.5(1), we find that the agreement was not void under section 537A.5(2) for two reasons. One, the statute voids indemnification clauses and these facts do not invoke the indemnity provisions of the contract. Two, because the statute applies prospectively, the contract—which predates the enactment—remains enforceable. We will address these reasons in turn.

**B. Hold Harmless Clause.**

Calabretto argues that the "hold harmless clause" in its agreement with Tradesmen "runs afoul" of the prohibitions in section 537A.5(2). The builder contends that the passage where it agrees to "release, defend, indemnify and hold Tradesmen harmless" from "all claims, losses, liabilities and costs" relating to property damage arising out of any wrongful or negligent act by Tradesmen's employees is "exactly the type of provision" prohibited by section 537A.5(2).

But as Tradesmen points out, even if the client services agreement contained an indemnity clause susceptible to the prohibitions in section 537A.5(2), that clause was not triggered here.[3] Indeed, no one asserted an indemnity claim.

---

[3] Rather, the clause governing these facts is the parties' agreement that Calabretto is "solely responsible for directing, supervising, and controlling Tradesmen employees as well as their work and Tradesmen does not warrant or insure the work." That clear agreement stands in the way of recovery by Calabretto for the damage Johnson caused during his work at the project site.

Recognizing that fact, the district court found: "In this action between the parties, there is no indemnity clause."[4] From there, the court decided that the bargained-for division of liability between the contracting parties was not a target of section 537A.5(2). In reaching that decision, the court relied on *Standard Water Control Systems, Inc. v. Jones*, 888 N.W.2d 673, 678 (Iowa Ct. App. 2016). That case interpreted section 537A.5(2) as applying only to indemnity claims. *Standard Water*, 888 N.W.2d at 678. It explained: "An indemnification clause 'does not apply to claims between the parties to the agreement. Rather it obligates the indemnitor to protect the indemnitee against claims brought by persons not a party to the provision.'" *Id.* (quoting *FNBC Iowa, Inc. v. Jennessey Grp., L.L.C.*, 759 N.W.2d 808, 811 (Iowa Ct. App. 2008)).

Calabretto ignores *Standard Water*—not citing it, much less distinguishing it. With no countervailing argument to consider, and seeing little daylight between these facts and those in *Standard Water*, we reject Calabretto's position.

### C. Retroactivity

Beyond the indemnity limitation, Tradesmen argues that section 537A.5(2) does not apply because the statute was enacted three years after Calabretto signed the client services agreement. For this retroactivity argument, Tradesmen relies on *Best Buy Stores, L.P. v. Russell Construction Co.*, No. 4:09-CV-518, 2011

---

[4] As the district court reasoned, the mention of indemnity in the "hold harmless clause" did not mean the entire contract was void under section 537A.5(2). The statute's text supports the district court's decision. As stated in section 537A.5(2), an offending "*provision* in a construction contract" is void, not the entire contract. *See First Mercury Ins. Co. v. Cincinnati Ins. Co.*, 882 F.3d 1289, 1298 n.4 (10th Cir. 2018). Because Tradesmen relies on contract terms not involving indemnification, those terms are not void under section 537A.5(2).

WL 13228239, at *8 (S.D. Iowa Oct. 5, 2011). In *Best Buy*, the federal district court declined to apply section 537A.5 to a contract existing before the statute's enactment. 2011 WL 13228239, at *8 (citing *Anderson Fin. Servs., LLC v. Miller*, 769 N.W.2d 575, 581 (Iowa 2009) (holding statute placing a cap on finance charges did not apply retrospectively)).

In its reply brief, Calabretto "does not contest that the statute should be applied prospectively." But the builder asserts that, unlike the situation in *Best Buy* where the alleged act resulting in damage predated the statute, here the "accident" happened after the date of enactment. And, in Calabretto's view, the date of the accident is the "event of legal consequence" that the statute governs. *See Hrbek v. State*, 958 N.W.2d 779, 782 (Iowa 2021) ("The event of legal consequence is the specific conduct regulated in the statute.").

When deciding retroactivity challenges like this one, we ask three questions. *See Nahas v. Polk Cnty.*, 991 N.W.2d 770, 777 (Iowa 2023). First: is the operation of the statute really retrospective, or does the provision attach a new legal consequence to events completed after its enactment? *Id.* If the statute does attach a new legal consequence to events completed before its enactment, we ask a second question: did the legislature expressly make the provision retroactive? *Id.* at 778. If so, we ask a third question: does any substantive law prohibit retrospective application of the statute? *Id.*

In answering the first question, "we must identify the event of legal consequence that the statute governs." *Id.* We conclude that the relevant event here is the formation of the contract. The 2011 statute contains new standards for construction contracts; it imposes new consequences—finding provisions void and

unenforceable—when those provisions require one party to indemnify any other party to the contract.  *See* Iowa Code § 537A.5(2).  Agreeing to those indemnity provisions was the act "that the rule regulates."  *Hrbek*, 958 N.W.2d at 782.  We also look to contract formation as the relevant event, because the presumption against statutory retroactivity is strongest when new laws affect "contractual or property rights, matters in which predictability and stability are of prime importance."  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 271 (1994).  A contract conforming to public policy when made is normally not rendered unlawful by a subsequent policy change.  *Diamond Transp. Logistics, Inc. v. Kroger Co.*, 649 F.Supp. 3d 608, 621 (S.D. Ohio, 2023) (citing *Jennyo v. Warner & Swasey Co.*, 385 N.E.2d 630, 631 (Ohio 1979) (finding anti-indemnity statute did not apply retroactively to invalidate indemnification agreement entered before effective date of legislation)).

Because the event impacted by section 537A.5 is the agreement to indemnify in a construction contract, we turn to the second question.  What does the statute say?[5]  We presume a statute operates prospectively unless the

---

[5] Here is the pertinent statutory language:

> [A] provision in a construction contract that requires one party to the construction contract to indemnify, hold harmless, or defend any other party to the construction contract, including the indemnitee's employees, consultants, agents, or others for whom the indemnitee is responsible, against liability, claims, damages, losses, or expenses, including attorney fees, to the extent caused by or resulting from the negligent act or omission of the indemnitee or of the indemnitee's employees, consultants, agents, or others for whom the indemnitee is responsible, is void and unenforceable as contrary to public policy.

Iowa Code § 537A.5(2)

legislature expressly made it retrospective. *Nahas*, 991 N.W.2d at 778 (citing Iowa Code § 4.5). This statute is silent on retroactivity.[6] *Best Buy*, 2011 WL 13228239, at *8. Because no statement makes the anti-indemnity provisions retrospective, the law applies prospectively to contracts entered after the statute's effective date. *See Nahas*, 991 N.W.2d at 779. The client services agreement between Calabretto and Tradesmen does not fall into that category. So we agree with Tradesmen that section 537A.5(2) cannot render its existing contract void.

### D. Contract Cancellation

Calabretto next argues that an affidavit from its owner avowing that he cancelled the contract, on an unknown date before the forklift incident, generated a genuine issue of material fact for trial. We disagree.

The district court addressed this issue in a footnote stating: "[T]he court finds Jesse Calabretto's affidavit violates Iowa Rule of Civil Procedure 1.981[5]. The affidavit is also self-serving,[7] conclusory, and does not contain information that rises to the level of creating a genuine issue of material fact."

---

[6] Calabretto does not flag any language in section 537A.5 that expresses, or even implies, the legislature's intent that the statute should operate retroactively. We recognize that our supreme court has read the language "any provision in any lease or contract notwithstanding" in a newly enacted statute as implying retrospective application to all leases containing a provision in conflict with the statute. *See Aetna Ins. Co. v. Chi. Great W. R.R. Co.,* 180 N.W. 649, 651 (Iowa 1920). But section 537A.5(2) is not similarly worded.

[7] We are wary of the term self-serving here. True, "a self-serving affidavit manufactured by an interested party to defeat summary judgment after potential flaws in the case have been exposed may be so egregious that the magic affidavit should not be allowed to generate a genuine issue of material fact." *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 341 (Iowa 2020) (Appel, J., dissenting). But determinations of witness credibility are a core jury function better left for trial. *Id.* Even an affidavit that proves to be self-serving may be evidence for the trier of fact to believe or disbelieve. *See Bieniak v. Romstad*, No. 05-0432, 2005 WL 1750489, at *5 (Iowa Ct. App. July 27, 2005). Yet, as Tradesmen argued

Iowa Rule of Civil Procedure 1.981(5) specifies:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . .  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered.

While Calabretto's affidavit is based on personal knowledge, his bare assertion that the contract was cancelled before 2019 lacks support.  Calabretto did not specify when the contract was cancelled; nor did he offer any email or other communication documenting the alleged cancellation.[8]  The affidavit did not present "specific facts showing there is a genuine issue for trial" as required by rule 1.981(5).  Conclusory statements in an affidavit are insufficient to successfully resist a summary judgment motion.  *See Wemett v. Schueller,* 545 N.W.2d 1, 2–3 (Iowa Ct. App. 1995).  "Even viewing the affidavit in the light most favorable to [Calabretto], a reasonable mind could not find it presents a material issue without more information."  *See IA Pizza, Inc. v. Sherwood*, No. 22-1706, 2023 WL 6293846, at *3 (Iowa Ct. App. Sept. 27, 2023).  And summary judgment is appropriate when the record contains no genuine issue of material fact.  *Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988).

---

in support of its summary judgment motion, the problem was that the owner's affidavit submitted with Calabretto's resistance marked a "pivot" from its earlier position that the existing contract was void and unenforceable.

[8] As noted above, Tradesmen submitted an affidavit from its account executive asserting the client services agreement remained in place.

### E. Calabretto's Cross-Motion for Summary Judgment

Calabretto next argues that the district court erred in finding that its grant of summary judgment for Tradesmen was "dispositive of the issues." Calabretto contends the court should have separately considered its cross-motion for summary judgment. Trouble is, Calabretto offers no authority to support its contention that the district court could not consider the dueling motions for summary judgment in tandem as raising the same legal issue—whether contract terms defeated Calabretto's tort claim. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014) (considering cross-motions together because they presented "two sides of the same coin"). Because Calabretto cites no case law to support its position, we consider the argument waived. *See State v. Maynard*, 232 N.W.2d 265, 266 (Iowa 1975) ("We are under no compulsion to review any assignment of error when the complaining party cites no authority in support of his argument."). But even if Calabretto had not waived this issue, we would find the district court properly considered both parties' motions for summary judgment.

### F. Economic Loss Doctrine

Before closing, a note on the economic loss doctrine. Adopting Tradesmen's argument, the district court found: "The factual nature of Calabretto's claim, the type of risk, and the alleged damages relate to unfulfilled expectations under the contract. Each of the damages identified by Calabretto are for harm to the worksite itself, not to other people or property." *See Annett Holdings, Inc. v. Kum & Go, L.C.,* 801 N.W.2d 499, 505 (Iowa 2011) (explaining that economic loss doctrine "bars recovery in negligence when the plaintiff has suffered only economic

loss"). Calabretto contests that finding, insisting its lawsuit requires a tort remedy not barred by the economic loss doctrine.

We need not enter that fray. As we reasoned above, section 537A.5(2) does not void the relevant terms of the client services agreement. Under those terms, Calabretto agreed that Tradesmen would not be liable for any property damages arising from the work of Tradesmen employees. That agreement bars Calabretto's tort claim alleging negligence by the forklift operator. Thus, summary judgment for Tradesmen was proper.

**AFFIRMED.**

Greer, Schumacher, Badding, and Buller, JJ., concur; Doyle, S.J., concurs; Langholz, J., concurs specially.

**LANGHOLZ, Judge** (concurring specially).

I join nearly all of the court's well-reasoned opinion. I agree that Calabretto Building Group's negligence suit against Tradesmen International, Inc. is barred by the terms of their contract. Calabretto did not generate a fact dispute that the contract had been cancelled. And the anti-indemnity-clause provision of Iowa Code section 537A.5(2) (2020), as interpreted by binding precedent of our court, does not void those terms in this suit between parties to the contract. I would stop there—having decided all issues necessary to resolve this appeal and affirm the dismissal of this suit. But the majority continues on—deciding that section 537A.5(2) cannot apply to the parties' contract because the statute was enacted after the contract was executed. I would not reach this retroactivity question because it is unnecessary and a host of reasons counsel against doing so.

For starters, the district court did not decide the issue. Of course, we *can* affirm based on an argument presented to but not ruled on by the district court. *See Off. of Citizens' Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 23 (Iowa 2012). But we take this step away from our normal practices in the interests of fairness and efficiency. It would be unfair for appellees to lose just because a district court did not address their winning argument. And it would be inefficient if we reversed and remanded merely for the district court to reach the same result on a ground we could have easily decided right away. So too would it waste judicial resources if district courts felt the need to unnecessarily decide every single possible issue— and litigants tried to force the same through rule 1.904 motions—just to avoid the risk of either of those scenarios.

Neither fairness nor efficiency is served here. This case is over—with the same result—whether or not we decide the retroactivity issue. I thus see no reason to proceed without a district court decision on the issue. Doing so deprives us of the benefit that comes from conducting an independent review of the written reasoning of another impartial judicial officer. And it deprives the parties of the benefit that comes from challenging or defending a concrete and complete legal analysis—the hallmark of appellate litigation.

Understandably—given this procedural posture and the many other issues demanding the parties' attention in this appeal—we also lack the benefit of robust briefing by the parties. The retroactivity issue was first raised as an alternative ground for affirming in only three pages of Tradesmen's brief. Tradesmen bases its argument mainly on a single federal district court decision holding that section 537A.5 did not apply to void provisions in contracts executed before its enactment. *See Best Buy Stores, L.P. v. Russell Constr. Co.*, No. 4:09-CV-518, 2011 WL 13228239, at *8 (S.D. Iowa Oct. 5, 2011). But that decision is not binding on us. *See McClure v. Owen*, 26 Iowa 243, 249–55 (1868). And it is of minimal persuasive value because it was decided before our supreme court clarified the critical threshold inquiry: "whether application of a statute is in fact retrospective." *Hrbek v. State*, 958 N.W.2d 779, 782 (Iowa 2021). This inquiry focuses on identifying whether "the event of legal consequence"—"the specific conduct regulated in the statute"—occurred before or after the statute's effective date. *Id.*

Tradesmen offers no argument on the proper event of legal consequence here. The majority thus had to do Tradesmen's work for it, constructing the proper analysis from scratch—largely untested by the adversarial process. And I'm not

sure we've gotten it right. The majority concludes that "contract formation" is the event of legal consequence. But section 537A.5 doesn't prohibit the formation of contracts with indemnity clauses or put any consequence on parties who enter into those contracts; it just states that an indemnity clause "is void and unenforceable." Iowa Code § 537A.5(2). So is the statute best understood as regulating formation or enforcement of contracts? Or for this anti-indemnity-clause statute, maybe the conduct regulated is the allegedly negligent actions for which indemnification is sought? We haven't seen briefing on these questions. Indeed, Calabretto is particularly disadvantaged by not having the chance to respond with its view of the proper analysis of an issue it is seeing for the first time in the majority's opinion.[9]

Even setting aside this threshold issue, Tradesmen also offers little support for its favored interpretation that section 537A.5 does not apply to preexisting contracts. Neither Tradesmen nor the federal court in *Best Buy* considered two on-point cases addressing similar statutes. *Compare Aetna Ins. Co. v. Chi. Great W. R.R. Co.*, 180 N.W. 649, 650–51 (Iowa 1920) (holding that a statute voiding certain liability releases "in any lease or contract" applied to a lease executed before enactment of statute because "[t]here is nothing in the language of the statute restricting its meaning to leases or contracts of a subsequent date"), *with Anderson Fin. Servs., LLC v. Miller*, 769 N.W.2d 575, 578–82 (Iowa 2009) (holding

---

[9] Even without argument from Tradesmen—or analysis from the district court—to respond to, Calabretto still homes in on this temporal issue in its reply brief. While Calabretto does not cite *Hrbek* or apply that analysis, it intuitively argues that we should distinguish *Best Buy* because the allegedly negligent actions here occurred after the statute's effective date, but in *Best Buy*, they occurred before enactment. *See Best Buy*, 2011 WL 13228239, at *1. Calabretto also highlights that even the *Best Buy* lawsuit itself was filed before enactment of the statute. *See id.*

that a statute providing that "[a] lender shall not contract for or receive a finance charge exceeding twenty-one percent" did not apply to existing contracts because "[t]he language 'contract for' does not unavoidably imply an intent to reach past transactions" and the attorney general conceded that "or receive" was irrelevant to the issue). At least tentatively, I do not see the daylight between the wording of section 537A.5 and the statute in *Aetna* that the majority does.[10] But I would benefit from briefing by the parties on how these cases—and maybe others— govern the proper interpretation of section 537A.5 before deciding this question too. Again, we have none.

To be sure, concluding that section 537A.5 would apply to preexisting contracts is not without complications. Such an interpretation would implicate the contracts clauses of the United States and Iowa constitutions. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts."); Iowa Const. art. I, § 21 ("No . . . law impairing the obligation of contracts, shall ever be passed."); *see also Hrbek*, 958 N.W.2d at 782 (noting we must consider any constitutional problems with retrospective application if we get to the final step of the retroactivity analysis). Neither constitutional provision has recently been interpreted to be as strict and absolute as its text may appear; instead, a rather extensive three-step inquiry is needed to decide whether a statute passes constitutional muster. *See Equip. Mfrs. Inst. v. Janklow*, 300 F.3d 842, 850

---

[10] Section 537A.5 provides that an indemnity clause in a construction contract "is void and unenforceable" and broadly defines construction contracts as including "*all* public private, foreign, or domestic agreements as described in this subsection," except for various public road contracts. Iowa Code § 537A.5(1)–(2) (emphasis added). Rather than applying to "all" contracts, the statute in *Aetna* applied to "*any* lease or contract." *Aetna*, 180 N.W. at 650 (emphasis added).

(8th Cir. 2002); *Adair Benevolent Soc'y v. State*, 489 N.W.2d 1, 5 (Iowa 1992). Yet again, we are in the dark—without briefing to help navigate these issues. But the "constitutional icebergs" still lurk. *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 74 (Iowa 2010). So this is another reason for us to steer clear for now.

What's more, our ruling here has broader implications—not just for this construction-contract statute—but for similar statutes. Section 537A.5 is not alone in voiding contract terms without distinguishing between existing and post-effective-date contracts. *See* Iowa Code §§ 322A.19–322A.23 (voiding many terms in motor-vehicle-franchise contracts); *id.* § 523G.9 (voiding waiver terms in invention-development contracts); *id.* § 537A.6(2) (voiding choice-of-law and choice-of-forum terms in in-state-construction contracts); *id.* §§ 714E.5, 714E.9 (voiding waiver and arbitration-clause terms in foreclosure-consultant contracts); *see also* 2023 Iowa Acts ch. 17, § 4 (to be codified at Iowa Code § 715D.4(4)) (voiding terms that "waive or limit in any way" consumer-data-privacy rights under a statute that will take effect January 1, 2025). Deciding the retroactivity issue here thus casts doubt on whether all these statutes apply to existing contracts as well.

For these many reasons, I would refrain from deciding here whether section 537A.5(2) could apply to void a provision in a contract executed before the statute was enacted. The answer to that tough question does not affect this appeal. So we should wait to give the answer in a case in which it matters. *See Whitehouse v. Ill. Cent. R.R. Co.*, 349 U.S. 366, 372–73 (1955) (counseling, when faced with reaching "perplexing questions," that "[t]heir difficulty admonishes us to observe the wise limitations on our function and to confine ourselves to deciding only what is necessary to the disposition of the immediate case").